McKESSON CHEMICAL COMPANY,
Appellant,

v.

PHELPS DODGE CORPORATION and
Manuel Rodriguez, Appellees.

No. 1971cv.

Court of Appeals of Texas,
Corpus Christi.

May 27, 1982.
Rehearing Denied Sept. 9, 1982.

Russell H. McMains, Edwards & Perry, Corpus Christi, for appellant.

Kevin J. Keith, C. Edward Fowler, Jr., Bailey, Williams, Westfall, Lee & Fowler, Dallas, Guy Allison, Corpus Christi, for appellees.

Before BISSETT, KENNEDY and GONZALEZ, JJ.

## OPINION

KENNEDY, Justice.

This appeal concerns the right of appellee Phelps Dodge Corporation to be indemnified by appellant McKesson Chemical Company. The issue arises out of a judgment taken by one Manuel Rodriguez (referred to herein as plaintiff, that being the position he held in the lower court) against appellee. A recitation of the history of this litigation is necessary to the disposition of the case.

Appellee is a large producer of sulfuric acid; appellant a large purchaser and distributor of same. Purchases are initiated by appellant's periodic presentment to appellee of written purchase orders. That quantity of sulfuric acid specified in the purchase order is then shipped to appellant in railroad tank cars leased by appellee and subleased to appellant. This car-leasing arrangement is pursuant to a Trip Lease Agreement entered into by appellant and appellee in June, 1977, which reads, in pertinent part, as follows:

"8. LESSEE [appellant] agrees to indemnify and hold LESSOR [appellee] harmless from and against all claims, suits and demands for injury or death of any employee of LESSEE, or of any oth-er person, and for loss or damage to any property whatsoever, real or personal, including the cars leased hereunder and the commodities loaded therein, that may occur in connection with or arise out of the use or possession by LESSEE of any cars leased under this agreement, except while such cars are in custody of a railroad, whether said injury, death, loss or damage shall result from negligence of LESSEE, its agents, employees or otherwise."

In September, 1978, a tank car containing one hundred (100) tons of sulfuric acid was shipped by appellee to appellant. The "Terms and Conditions of Sale" embodied in the written purchase order which initiated the shipment included the following:

"By acceptance of this order, the undersigned vendor guarantees that all merchandise now being sold or which may hereafter be sold or delivered to us, which under the provisions of the Explosive and Combustible Act of 1960 (U.S. Code Title 18, Sections 831–835) and the Transportation Act of 1974 (P.L. 93–633) are defined as hazardous by the Department of Transportation (Code of Federal Regulations, Title 49, Parts 170–179), will be at the time of its delivery as required by this order, packaged, labeled and shipped in accordance with the aforementioned laws and regulations and any exemption therefrom."

While the tank car was being unloaded at appellant's plant by plaintiff, the hose through which the acid is discharged became dislodged from the discharge nipple affixed to the car, and plaintiff was sprayed by the sulfuric acid resulting in serious burns. The evidence was uncontroverted that the discharge hose and nipple were in an unsafe and defective condition when the tank car left appellee's plant, and should not have passed inspection there.

In response to special issues, the jury found that the tank car was defective at the time it was delivered to appellant; that it was not reasonably suited for its intended use; that the Terms and Conditions of Sale found on the purchase order to the effect

that the acid was shipped in accordance with Department of Transportation regulations reasonably implied that the defective car was safe to use; that such statement was false and was relied upon by appellant; that appellee was negligent in failing to make an adequate inspection of the discharge nipple prior to shipment; and that appellant was negligent in failing to provide plaintiff with adequate protective clothing. Applicable proximate and producing cause issues relating to all of the aforementioned acts and omissions were answered in the affirmative. Plaintiff was found not to have been contributorily negligent, nor to have assumed the risk. As regards the negligence findings, the jury attributed 5% to appellant and 95% to appellee. Damages were assessed in excess of one million dollars.

Judgment on the verdict was entered in favor of plaintiff against appellee. The judgment also decreed that, to the extent that such sum was paid, appellee be indemnified by appellant by virtue of the indemnity clause contained in Paragraph 8 of the Trip Lease Agreement, recited supra. In this the trial court was in error.

The position taken by appellee, and adopted by the trial court, is that the aforementioned indemnity clause contained in the Trip Lease Agreement serves to indemnify appellee against its own wrongdoing. In order for an indemnity agreement to protect an indemnitee from the consequences of its own negligence, the obligation of the indemnitor to do so need not be stated in so many words, but must be expressed in clear and unequivocal terms. *Firemen's Fund Insurance Co. v. Commercial Standard Insurance Co.,* 490 S.W.2d 818, 822 (Tex. 1973); *Sira & Payne, Inc. v. Wallace & Riddle,* 484 S.W.2d 559, 561 (Tex. 1972); *Joe Adams & Son v. McCann Construction Co.,* 475 S.W.2d 721, 723 (Tex. 1972). Texas courts have been progressively stricter in applying the "clear and unequivocal" rule in the sundry cases that have dealt with the issue over the last three decades. *Eastman Kodak Co. v. Exxon Corp.,* 603 S.W.2d 208, 211 (Tex. 1980).

Broad general statements of indemnity which do not fall within one of the following three categories are unenforceable:

1. Those in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality.

2. Those which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract.

3. Those in which there is an unequivocal provision that the indemnitor will protect and indemnify the indemnitee from any and all liabilities by reason of injuries to indemnitor's employees. *Eastman Kodak Co. v. Exxon Corporation,* supra, 603 S.W.2d at 212; *Firemen's Fund Insurance Co. v. Commercial Standard Insurance Co.,* supra, 490 S.W.2d at 822.

Thus, Texas courts have "progressed toward the so-called 'express negligence' rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for its own negligence." *Firemen's Fund Insurance Co. v. Commercial Standard Insurance Co.,* supra, at 822. Contracts whereby one agrees to accept responsibility for the negligence of another are viewed as the exception rather than the rule in business transactions. *Spence & Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631, 633 (Tex. 1963).

"The obvious purpose of this rule is to prevent injustice. A contracting party should be upon fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party." Id. at 634.

These same rules will be applied in determining whether an agreement purports to indemnify one against the consequences of supplying a defective product. See *Rourke v. Garza,* 511 S.W.2d 331, 341 (Tex. Civ. App.—Houston [1st Dist.] 1974), aff'd, 530 S.W.2d 794 (Tex. 1975).

■ It is apparent that the trial court predicated its holding on that portion of the indemnity clause in the Trip Lease Agreement wherein appellant agrees to hold appellee harmless from claims, etc., arising out of the use of the tank cars, whether such "shall result from the negligence of LESSEE [appellant], its agents, employees *or otherwise."* (Emphasis ours.) Other than indemnifying against the negligence of appellant's own agents and employees, this clause represents to us the height of ambiguity. We cannot accept the proposition that the phrase "or otherwise" clearly and unequivocally expresses an intent that appellee should be free of all liability for any wrongdoing, and that appellant should assume the burden of all of appellee's acts and omissions which, in this case, include negligence, breach of implied warranty, misrepresentation, and the supplying of a defective product. Indeed, we are not of the opinion that the indemnity clause here in issue clearly and unequivocally indemnifies appellee against anything other than that expressly enumerated, i.e., the negligence of appellee's own people. Appellant's points of error complaining of the judgment of the trial court on this basis are sustained.

■ In his final points of error, appellant complains of the jury's proration of the negligence of each party. That issue, Special Issue No. 27, inquired:

"What percentage of the negligence that caused *the occurrence* in question do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?" (Emphasis supplied.)

The jury allocated 95% to appellee, and 5% to appellant. Appellant's position in this Court is that the "occurrence in question" is the acid spill, the sole cause of which was, as a matter of law, the acts and omissions of appellee. We do not view "the occurrence" which produced "the injuries" quite so narrowly.

Breaking the accident down sequentially, we see that it was, as are most accidents, a three-stage process: 1) the acid spilled 2) upon plaintiff 3) burning him. We view the first two events in that sequence as being "the occurrence," and the third as "the injury." We draw an analogy to an automobile accident wherein a driver negligently enters an intersection, striking a pedestrian, breaking his (the pedestrian's) legs. The "occurrence" would not simply be the act of entering the intersection, but rather would include the striking of the pedestrian, resulting in the "injury," i.e., the broken legs.

Thus, we find no error in the jury's conclusion that the "occurrence" was due in part to appellant's negligent failure to provide its employee with adequate protective clothing. Appellant's seventh and eighth points of error are overruled.

The judgment of the trial court is AFFIRMED insofar as it orders, adjudges and decrees as follows:

"It is further ORDERED, ADJUDGED AND DECREED that the Plaintiff and Phelps Dodge Corporation take nothing as against Union Tank Car Company, Inc."

The judgment of the trial court is REVERSED insofar as it orders, adjudges and decrees the following:

"It is therefore ORDERED, ADJUDGED AND DECREED that the Plaintiff Manuel Rodriguez do have and recover judgment of and from the Defendant Phelps Dodge Corporation in the amount of One Million One Hundred Seventy One Thousand and No/100 ($1,171,000.00) Dollars together with interest thereon at the reat [sic] of nine percent (9%) from the date hereof until paid;

\*    \*    \*    \*    \*    \*

It is further ORDERED, ADJUDGED AND DECREED that to the extent Phelps Dodge Corporation pays Plaintiff Manuel Rodriguez, the sums due and owing under this judgment, that Phelps

Dodge Corporation recover indemnity for such amounts against the Third Party Defendant McKesson Chemical Company pursuant to the indemnity contract which is the subject of such third party action;"

Judgment is here RENDERED 1) that plaintiff have judgment in the amount of 95% of $1,171,000.00 against appellee and that he have judgment in the amount of 5% of $1,171,000.00 against appellant, and 2) that appellee take nothing on its claim for indemnity against appellant. It is further ordered that costs of this appeal be taxed against appellee and appellant in the amounts of 95% and 5% respectively.