Shirley HAYWOOD, Guardian of the Minor, Lee Renfro, Plaintiff,

v.

SOUTHWESTERN ELECTRIC POWER COMPANY, Defendant-Appellant,

v.

CITIES SERVICE COMPANY, Defendant-Appellee.

No. 82–2299.

United States Court of Appeals, Fifth Circuit.

June 27, 1983.

Rehearings Denied Aug. 16, 1983.

Herbert Boyland, Longview, Tex., for defendant-appellant.

Roberts & Harbour Law Firm, John M. Smith, Longview, Tex., for defendant-appellee.

Before RUBIN and TATE, Circuit Judges, and STAGG *, District Judge.

STAGG, District Judge:

This case presents an appeal from a jury verdict granting Cities Service Company ("Cities Service") full contractual indemnity for its share of a settlement agreement reached with the plaintiff on the opening day of trial. Because we find that the trial court erred in refusing to submit a special jury interrogatory on the issue of Cities Service's negligence, the judgment of the court below is reversed, and the case is remanded for a new trial consistent with this opinion.

I. FACTUAL BACKGROUND

In 1964, Southwestern Electric Power Company ("SWEPCO") entered into a con-

* District Judge of the Western District of Louisi-    ana, sitting by designation.

tract with Cities Service to furnish electricity to various oil leases located in the East Texas Oil Field. The electric service was utilized to operate oilfield pumping equipment.[1] The contract provided that Cities Service would "build, own and maintain" electric lines and other related instrumentalities necessary to transfer the current from SWEPCO's primary lines to the various oil leases.

As required by the contract, Cities Service installed the electric line upon which this case focuses. When construction of the line was complete, service was connected by SWEPCO, and electrical power was provided to Cities Service's lease through September 1980 when the facts surrounding this case arose.

The record reflects that when the electric line was constructed in 1964 there were no large trees along the route of the line which could possibly pose a threat to the public. However, as time passed, trees grew in the general vicinity of the electric line, and by 1975 the trees had matured sufficiently to require trimming limbs away from the electric line. In 1975 Cities Service requested that SWEPCO trim the trees along the subject line. After determining that the trees had overgrown the line, SWEPCO's contractor trimmed the trees. This is the only evidence of any efforts to trim the tree limbs away from the subject line.

On September 11, 1980, the minor plaintiff, Lee Renfro, was playing in a tree in the vicinity of his yard. While exploring the limbs of the tree, as children are wont to do, the child came into contact with the subject electric line and suffered serious personal injuries. The record reflects that the electric lines had fallen into a state of disrepair allowing the actual uninsulated core of the wire, carrying 12,500 volts, to be exposed.

## II. DISTRICT COURT PROCEEDINGS

Shirley Haywood filed suit in February 1981 against SWEPCO, seeking recovery of damages on behalf of herself and her son, Lee. In April 1981 the plaintiff joined Cities Service as a defendant in the action. Subsequently, SWEPCO and Cities Service instituted mutual cross-claims in which each sought indemnity from the other pursuant to the electric service contract noted above.

On the day of trial below a settlement agreement was entered into whereby the plaintiffs were paid a total of $291,204.19. Of this total amount, SWEPCO paid $100,000.00 and Cities Service paid $191,204.19. Thus, the purpose of the trial was solely to determine whether Cities Service was entitled to full indemnity from SWEPCO under the electric service contract's indemnity provision. The court submitted a verdict form to the jury which included three special interrogatories.[2] As a result of the jury's responses to the special interrogatories, judgment was entered on behalf of Cities Service requiring SWEPCO to indemnify Cities Service for its portion of the settlement agreement paid to the plaintiff. The court denied motions on behalf of

1. The "Contract For Electric Service" was executed on May 10, 1972, but reflected the provisions of the earlier 1964 agreement between SWEPCO and Cities Service. The indemnity agreement in the 1972 contract provides the basis of our decision here.

2. The verdict form submitted by the court to the jury contained the following interrogatories and responses:

    I.  Do you find from a preponderance of the evidence that the injury or damage to the minor child, Lee Renfro, was the result of negligence on the part of Southwestern Electric Power Company?
    Jury Response: We do.

    II.  Find from a preponderance of evidence which company, Southwestern Electric Power Company or Cities Service Oil Company, maintained the 12,500 volt line in question from the time of its installation until the date of the accident made the basis of this suit?
    Jury Response: Southwestern Electric Power Company.

    III.  Find from a preponderance of the evidence which company, Southwestern Electric Power Company or Cities Service Oil Company, the parties to the contract marked as Southwestern Electric Power Company's Exhibit 1 intended to own and maintain the 12,500 volt line in question.

    \*    \*    \*    \*    \*    \*

    Jury Response: Cities Service Oil Co.

SWEPCO for an instructed verdict, judgment notwithstanding the jury verdict and new trial.

In its appeal of the trial court's judgment, SWEPCO has raised five issues alleging error by the trial court:

(1) The award to Cities Service of full indemnity from SWEPCO;

(2) Failure to award SWEPCO full indemnity from Cities Service;

(3) Failure to submit a special interrogatory to the jury addressing the negligence of Cities Service as a proximate cause of the plaintiff's injury;

(4) Failure to submit a special interrogatory concerning the percentage of negligence on the part of SWEPCO and Cities Service; and

(5) A general failure to submit SWEPCO's requested jury instructions.

Because we find the trial court erroneously awarded full indemnity to Cities Service and failed to submit a special interrogatory addressing Cities Service's negligence, the remaining three issues need not be addressed in this opinion.

## III. LEGAL ANALYSIS

### A. *Preliminary Issue*

■ Cities Service argues in its brief on appeal that SWEPCO waived any objection to the instructions or special interrogatories submitted to the jury by failing adequately to object to the court's submissions. However, a brief review of the trial transcript at pages 213–20 makes it clear that counsel for SWEPCO did object to the court's jury instructions and special interrogatories. The court specifically stated that SWEPCO's objections to the jury instructions were overruled and that objections to the exclusion of any special interrogatories other than the three actually submitted to the jury were also overruled. The protestations lodged by SWEPCO's trial counsel were sufficient to "indicate that he was not fully satisfied" with the jury charges and special interrogatories. *Kestenbaum v. Falstaff Brewing Corp.,* 575 F.2d 564, 574 (5th Cir.

1978); Rule 51, Federal Rules of Civil Procedure. SWEPCO's objections were properly raised at trial and, therefore, are preserved for this appeal.

### B. *Contractual Indemnity Provision*

The contract between SWEPCO and Cities Service contains the following indemnity clause:

The Customer [Cities Service] will indemnify and save the Company harmless for all loss on account of injury or damage to persons or property on the Customer's premises growing out of any accident or mishap, unless the injury or damage should be the result of negligence on the part of the Company [SWEPCO]. Likewise the Company will indemnify and save the Customer harmless for all loss on account of injury or damage to persons or property growing out of such negligence on the part of the officers, agents, or employees of the Company.

SWEPCO Exhibit 1. SWEPCO asserts that this indemnity clause does not clearly and unequivocally provide for full indemnity to Cities Service where Cities Service is negligent. To support this argument SWEPCO argues that Cities Service had a duty under the electric service contract to maintain the subject electric line in conformity with good electrical practices. Cities Service has responded somewhat circuitously that the indemnity provision is ambiguous and that, therefore, the contract should be construed strictly against SWEPCO, the drafter of the contract. At no point in Cities Service's briefs is it argued that Cities Service was *not* negligent in failing to trim the tree which overgrew the subject electric line.

■ As required by the dictates of *Erie,* the outcome of this matter is determined by the law of Texas as interpreted by the state Supreme Court.[3] The well established general rule in Texas is that a negligent indemnitee is not entitled to indemnity unless there is a clear and unequivocal provision for such compensation in the indemnity contract. This general rule was recently set forth by the Texas Supreme Court in the

---

3. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64,     58 S.Ct. 817, 82 L.Ed. 1188 (1938).

case of *Eastman Kodak Company v. EXX-ON Corp.*, 603 S.W.2d 208 (Tex.1980). The Texas Court noted:

Over the last three decades, the trend of Texas case law has been progressively stricter in applying the rule that a contract of indemnity will not protect an indemnitee against his own negligence unless the obligation of the indemnitor to do so is expressed in *clear and unequivocal terms.*

603 S.W.2d at 211 (emphasis in original); *see also, Sira and Payne, Inc. v. Wallace and Riddle,* 484 S.W.2d 559 (Tex.1972); *Joe Adams and Son v. McCann Construction Company,* 475 S.W.2d 721 (Tex.1971); *McKesson Chemical Company v. Phelps Dodge Corp.*, 638 S.W.2d 64 (Tex.App., Corpus Christi, 1982, *writ refused n.r.e.*).[4]

This court has had the opportunity to apply Texas law concerning indemnification of a negligent indemnitee on several occasions. In the case of *Chevron Oil Company v. E.D. Walton Construction Company, Inc.,* 517 F.2d 1119 (5th Cir.1975), the panel noted:

[T]he decisions of Texas courts indicate an increasingly stricter application of a clear and unequivocal rule and have "progressed toward the so-called 'express negligence' rule as near as judicially possible without adopting it."

517 F.2d at 1121. More recently, further examination was made of the Texas requirement of a clear provision for the indemnity of a negligent indemnitee in *McClane v. Sun Oil Company,* 634 F.2d 855 (5th Cir.1981). In *McClane* it was observed:

[T]he Texas Supreme Court held that a contract of indemnity will not afford protection to an indemnitee against the consequences of its own negligent act unless the contract clearly expresses such an

obligation in unequivocal terms.... This holding has become known as the "clear and unequivocal rule" and has been considered by the Texas courts as the proper standard in interpreting indemnity provisions. [Citations omitted.] Broad general statements of indemnity obligations are usually not sufficient to protect indemnitees against their own negligence.... The Texas courts, to which we must defer in this diversity case, have held that indemnity provisions are to be strictly construed and have all but adopted the express negligence rule requiring the provision to state, in so many words, that an indemnitee is held harmless for his negligent acts.

634 F.2d at 857–58.

In another recent case, this court again was faced with determining Texas law concerning the indemnity of negligent indemnitees. In the case of *Barnes v. Lone Star Steel Company,* 642 F.2d 993 (5th Cir.1981), the *per curiam* opinion concluded in its general analysis of Texas law:

The parties have analyzed the issue in this appeal as coming under the well-developed Texas law on indemnification for the indemnitee's negligence. Such agreements are not against public policy in Texas. The determinative question is interpretation, not enforceability.... The recent case of *Eastman Kodak Company v. EXXON Corp.* [supra], indicates that as a general rule Texas requires that an agreement to indemnify another on account of his own negligence be expressed in those words.

642 F.2d at 995.[5]

■ When faced with a request by SWEPCO to submit a special interrogatory to the jury dealing with Cities Service's negligence, the court denied the request and stated:

---

4. For a discussion of the development and current status of the general rule concerning the indemnity of a negligent indemnitee, *see* Case Note, 50 Tex.L.Rev. 520 (1971–72); 14 Tex. Jur.3d § 24 (1981).

5. Although the *Barnes* (1981) opinion indicates that Texas now requires that indemnity for a negligent indemnitee must "be expressed in those words," the Texas Court of Appeals not-

ed in *McKesson Chemical Co.* (1982) that Texas has *yet* to adopt the "express negligence" rule. Even though the Texas jurisprudence is moving toward the "express negligence" rule, it has not gotten there yet. Thus, the "clear and unequivocal" rule is appropriate in interpreting the contract indemnity clause at issue here.

The reasons the Court had prepared the verdict form the way it did, and the reason the Court denied the request [for an instruction on Cities Service's negligence], or did not grant the request, was the next to the last paragraph on Page 1 of the contract speaks for contractual indemnity keyed solely to negligence on the part of Southwestern Electric Power Company. Therefore, the Court felt it unnecessary to have the Jury compare and then, the Court's interpretation of this contract is that the Cities Service Company could also have been negligent, but if SWEPCO was negligent under the contract, Cities Service is entitled to indemnity.

Trial Transcript at 214–15. It is clear from the trial court's comments that it had reached the conclusion that the indemnity provision at issue here covered the negligence of the indemnitee, Cities Service. In order for the trial court's conclusion to be correct, the contractual provision must "clearly and unequivocally" provide for the indemnity of a negligent indemnitee. A reading of the indemnity provision makes it clear that there was no mention whatsoever of the effect of Cities Service's negligence—contributory or sole—on the indemnity agreement. There is no express reference to indemnification for Cities Service's negligence, nor is there any language even colorably referring to Cities Service's negligence. The clause is of a *general nature* providing indemnity for harm caused by SWEPCO's negligence. This is precisely the type of general indemnity provision contemplated by the Texas courts in their formulation of the general rule against indemnity for a negligent indemnitee. Strikingly similar indemnity provisions were found *not* to contemplate indemnity for a negligent indemnitee in the *Eastman Kodak Company* and *McKesson Chemical Company* cases.[6] As in those two cases, the general indemnity clause set forth in the contract for electric service *sub judice* falls far short of providing indemnity for the negligent indemnitee.

The Texas courts have held that an agreement to indemnify for damages caused by the indemnitor's own "negligence" or "negligent act" does not clearly and unequivocally agree also to indemnify insofar as the indemnitor's negligence is concurrent with that of the indemnitee. *Sira & Payne, Inc. v. Wallace and Riddle, supra; City of Beaumont v. Graham,* 441 S.W.2d 829 (Tex.1969). The trial court's conclusion that Cities Service was entitled to indemnity without consideration of Cities Service's negligence as a cause of Lee Renfro's injuries was error and conflicts with current Texas jurisprudence. The jury should have been instructed on the effect of negligence on the part of Cities Service, and the court should have submitted a special interrogatory concerning the jury's finding with respect to Cities Service's negligence.

The facts of this case make it clear that the exceptions to the "clear and unequivocal rule" of indemnity contracts do not apply here. The Texas Supreme Court addressed the exceptions to the rule in the *Eastman Kodak Co.* case:

[B]road general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence, and ... the only presently recognized exceptions are limited to (1) agreements in which one person clearly under-

---

6. In the *McKesson Chemical Co.* case the indemnity clause provided:

LESSEE agrees to indemnify and hold LESSOR harmless from and against all claims, suits and demands for injury or death of any employee of LESSEE, or of any other person whether said injury, death, loss or damage shall result from negligence of LESSEE, its agents, employees or otherwise.

638 S.W.2d at 65. The court held that this terminology did not "clearly and equivocally [express] an intent that [the indemnitee] should be free of all liability for any wrongdoing...." *Id.* at 67.

In the *Eastman Kodak Co.* case the indemnity clause stated:

HUMBLE shall not be liable or responsible for the result of line breakage or other such occurrences, except those which are the result of HUMBLE's negligence or willful acts.

603 S.W.2d at 210. Again, the Texas court found the clause too general to allow indemnity for a negligent indemnitee.

takes to indemnify another against liability for injuries or damages caused by defects in *certain premises* or resulting from the maintenance or operation of a *specified instrumentality;* ... (2) agreements which fall within the peculiar circumstances of the indemnitor having *complete supervision* over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract ...; and (3) contracts in which there is an *unequivocal provision* that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees....

603 S.W.2d at 212 (Emphasis added). The contract language in this case does not justify the application of any of the exceptions to the "clear and unequivocal" rule.

### C. *Jury Instruction on Cities Service's Negligence*

For the reasons noted above, the jury should have been given an opportunity to determine whether Cities Service was negligent in fulfilling any duties imposed by the electric service contract, or whether Cities Service's negligence, if any, was a proximate cause of Lee Renfro's injury. The issue of negligence is a classic issue of material fact, and as noted in *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir.1969), "it is the function of the jury as the traditional finder of the fact, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d at 375.[7]

### IV. CONCLUSION

We hold that the trial court erred in failing to instruct the jury on the issue of Cities Service's negligence with respect to Lee Renfro's injuries, and in failing to sub-

mit to the jury a special interrogatory addressing that issue. The indemnity clause in the electric service contract does not contemplate indemnification without some consideration of Cities Service's negligence. The jury must have an opportunity to determine whether Cities Service was negligent, whether that negligence was a proximate cause of Lee Renfro's injuries and the extent of Cities Service's liability for those injuries. The judgment of the trial court is REVERSED, and the cause is REMANDED for a new trial.

---

**7.** The issues of whether there was evidence of Cities Service's negligence and whether this negligence was a proximate cause of Lee Renfro's injuries were not addressed by Cities Service or the trial court. However, the express provisions of the electric service contract and general Texas law provide two possible sources of a duty on the part of Cities Service to keep the subject electric line safe. *See,* SWEPCO's Exhibit 1; *Galveston-Houston Electric Ry. Co.*

*v. Reinle,* 113 Tex. 456, 258 S.W. 803 (Tex. 1924) [partially overruled on another issue in *Delhi-Taylor Oil Corp. v. Henry,* 416 S.W.2d 390, 393–94 (Tex.1967)]; *Edwards v. Shell Oil Co.,* 611 S.W.2d 904 (Tex.Civ.App.—Eastland, 1981, *writ refused n.r.e.*) [Joint fault on part of utility *and* owner of electric lines]; *Community Public Service Co. v. Baker,* 605 S.W.2d 622 (Tex.Civ.App.—Houston, 1980, *no writ*) [Joint fault].