EASTMAN KODAK COMPANY,
Petitioner,

v.

EXXON CORPORATION, Respondent.

No. B–9000.

Supreme Court of Texas.

July 2, 1980.

Rehearing Denied July 30, 1980.

Hathaway, Jackson & McClendon, Thomas W. Hathaway, Tyler, for petitioner.

Robert D. McGee, Houston, for respondent.

BARROW, Justice.

The question here is whether under the contract in question between petitioner, Eastman Kodak Company, defendant below, and respondent, Exxon Corporation,[1] plaintiff below, Eastman agreed to indemnify Exxon against its own negligence. Trial to the court with the material facts stipulated resulted in a take-nothing judgment against Exxon. The court of civil appeals reversed the trial court judgment and rendered judgment that Exxon recover from Eastman the sum of $2,148,305.82 with interest from June 20, 1978, until paid. 589 S.W.2d 473. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

■ In May 1951, Exxon· and Eastman entered into a written contract calling for the construction, maintenance and operation by Exxon of a pipeline to transport liquefied hydrocarbon products from Exxon's East Texas gasoline plants to East-

man's plant located near Longview, Texas. The pipeline had been in use for approximately twenty years when it developed a leak. An explosion occurred when a vehicle drove into a pocket of propane gas which had leaked from the line and as a result one person was killed and another severely injured. It is stipulated that the leak was caused by the negligence of Exxon. Exxon subsequently paid $2,148,305.82 in damage judgments and attorneys' fees and brought this suit to recover that amount from Eastman. The basis for the suit is that under the contract between Exxon and Eastman, Eastman allegedly agreed to indemnify Exxon against such losses.

The relevant provisions of the PRODUCTS PIPE LINE CONTRACT between the parties dated March 2, 1951, are these:

"I.

*Construction of Pipe Line.*

"HUMBLE agrees to purchase and secure the necessary right of way for and to construct at its expense a four-inch (4″) pipe line from its London Plant in Gregg County, Texas, or the storage tanks near the Plant, to the . nearest boundary line of the Plant site of EASTMAN in Gregg and Harrison Counties, Texas. EASTMAN agrees to reimburse HUMBLE in cash for all of its cost and expense incurred in the acquisition of such right of way and the construction of said pipe line. . . ."

"II.

*Operation of Line.*

"HUMBLE *agrees to operate and maintain the pipe line constructed by it* in accordance with the preceding article throughout the term of the contract of even date herewith mentioned above, *the operation of said line to be for the purpose of delivering the products purchased by EASTMAN under said contract of*

---

1. Exxon Corporation is the successor to Humble Oil and Refining Company, the actual signatory to the contract.

*even date herewith* and any additional products purchased by HUMBLE under the terms of the next succeeding Article hereof. HUMBLE shall keep an accurate record of its expenditures in carrying out said obligation, including all direct operating expenses and a reasonable proportion of HUMBLE's district office expenses. The items of expense to be charged to said account, both in connection with the construction of said line and the operation (Not including pumping costs) and the maintenance thereof, shall be in accordance with those listed in the Accounting Procedure attached hereto and made a part hereof for all purposes. No part of HUMBLE's Houston office expense shall be charged to said account.

"*HUMBLE shall not be liable or responsible for the result of line breakage or other such occurrences, except those which are the result of HUMBLE's negligence or willful acts.*

"*EASTMAN agrees to reimburse HUMBLE for its cost and expense in operating and maintaining the pipe line,* such payments to be made in cash at monthly intervals . . . .*

"During the term hereof, EASTMAN shall have the right of inspection of the line at any time and shall have the right to require changes in maintenance procedures and maintenance work done if in EASTMAN's opinion such changes are required for safe and economical operation and maintenance.

. . . . .

"X.

*Insurance.*

"In the performance of this contract, HUMBLE agrees to carry public liability and property damage insurance in such amounts and limits and with such insurers *as EASTMAN may request or approve. Premiums for such insurance shall be reimbursed HUMBLE by EASTMAN pursuant to the provisions of 'Exhibit A' hereof.*" (Emphasis Added.)

The relevant provisions of EXHIBIT "A" ACCOUNTING PROCEDURE, which is at-

tached to and made a part of the contract are these:

"EXHIBIT 'A'

ACCOUNTING PROCEDURE

. . . . .

"The term 'Pipe Line Operator' as herein used shall be construed to mean Humble Oil & Refining Company.

"The term 'Non-Operator' as used herein shall be construed to mean Texas Eastman Company, Division of Eastman Kodak Company.

. . . . .

"I.

. . . . .

"Subject to the limitations hereinafter prescribed, Pipe Line Operator shall charge the Pipe Line Account with the following items:

. . . . .

"7. Damages or losses incurred by fire, flood, storm, or from any other cause *not controllable by Pipe Line Operator through the exercise of reasonable diligence.*

"8. *All costs and expenses of litigation,* or legal services otherwise necessary or expedient for the protection of each party hereto including attorney's fees and expenses as hereinafter provided, together with all judgments obtained against the Pipe Line Account or the subject matter of this agreement: actual expenses incurred by any party or parties hereto in securing evidence for the purpose of defending against any action or claim prosecuted or urged against the Pipe Line account of the subject matter of the agreement to which this EXHIBIT 'A' is attached.

"A. Pipe Line Operator shall promptly notify Non-Operator of the initiation or filing by third parties of any litigation or claim arising out of or connected with the performance of said agreement. *Non-Operator shall have the*

*right, at its option, to participate in the defense of any such litigation and to approve in advance the settlement of any such claim.*

. . . . .

"10. Insurance:

"A. Premiums for workmen's compensation insurance, and any other insurance carried by Pipe Line Operator on the Pipe Line or its operations; *together with all expenditures incurred and paid in settlement of claims or judgments* not recovered from the insurance carrier to fully discharge all liability of Pipe Line Operator ensuing from an accident occurring on or in connection with operations for the benefit of the Pipe Line account.

"B. If no insurance is carried on any or all of the above or other risks, *all actual expenditures incurred and paid by the Pipe Line Operator in settlement of any and all losses, claims, damages, judgments, and any other expenses including legal services shall be charged to the Pipe Line account.*" (Emphasis Added.)

■ Over the last three decades, the trend of Texas case law has been progressively stricter in applying the rule that a contract of indemnity will not protect an indemnitee against his own negligence unless the obligation of the indemnitor to do so is expressed in *clear and unequivocal terms.* See: *Mitchell's Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775 (1957); *Spence & Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631 (Tex.1963); *Joe Adams & Son v. McCann Construction Company,* 475 S.W.2d 721 (Tex.1971); *Sira & Payne, Inc. v. Wallace & Riddle,* 484 S.W.2d 559 (Tex. 1972); *Fireman's Fund Ins. Co. v. Commercial Stand. Ins. Co.,* 490 S.W.2d 818 (Tex. 1972); Reynolds *Contracts of Indemnity in Texas,* 43 Tex.B.J. 297, 300 (1980).

In *Fireman's Fund, supra,* we said:

"The above cases stand for the general rule followed in Texas and a majority of other jurisdictions that a contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms.

. . . . .

"We have, in fact, progressed toward the so-called 'express negligence' rule as near as is judicially possible without adopting it and thereby *requiring in all cases* that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence. . . ." (Emphasis Added.)

■ The only provision in the main body of the contract between these parties relating to liability affirmatively requires Exxon, formerly Humble, to be responsible for line breakage or other occurrences which are the result of its own negligence or willful acts. Paragraph II of the contract provides:

"HUMBLE shall not be liable or responsible for the results of line breakage or other such occurrences, except those which are the result of HUMBLE's negligence or willful acts."

Respondent urges that this express covenant applies solely to losses involving only respondent and petitioner. We disagree. The covenant is not so limited by the contract.

This covenant is particularly important in the case before us in that the respondent seeks indemnity for the sums it paid in settlement of lawsuits arising out of an explosion caused by a leak in respondent's line. It was stipulated that this accident was proximately caused by the negligence of respondent. Thus, respondent is seeking indemnity from the results of line breakage proximately caused by its negligence.

While the contract or accounting procedures here contain certain paragraphs which provide or at least infer an intent for petitioner to hold harmless, other paragraphs are repugnant to such an intent. In particular, the contract provides expressly that Exxon shall be responsible for the results of line breakage which are the result of its own negligence or willful acts. Also,

respondent may not be reimbursed for damages or losses controllable through the exercise of reasonable diligence. In view of these conflicting provisions, it cannot be said that the contract "clearly and unequivocally" requires petitioner to indemnify respondent from losses caused by the latter's own negligence.

■ Respondent urges, however, that the "clear and unequivocal" rule does not apply when the contract provides for indemnity against injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality. In *Firemen's Fund, supra,* we said:

"In this connection, it should be clear from our opinion in *McCann, supra,* including its discussion of the leading cases and modification of our opinion in *Ohio Oil Co. v. Smith,* 365 S.W.2d 621 (Tex. 1963), that broad general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence, and that the only presently recognized exceptions are limited to (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality as in *Mitchell's, Inc. v. Friedman, supra,* and *Houston & T. C. R. Co. v. Diamond Press Brick Co.,* 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (1920); (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract, as in *Spence & Howe, supra* ; and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees as in *Ohio Oil, supra.*"

When this statement is examined in context with the preceding sentence of that paragraph which required the parties to state "in so many words that they intended to save the indemnitee harmless from liability for his own negligence," it is clear that the so-called exceptions serve only to eliminate in these instances the requirement of the specific use of the words "the indemnitee's own negligence."

■ Furthermore, the first "so-called exception" is not a true exception, but in reality is only an application of the general rule, for when indemnity is *clearly* expressed with reference to specific premises or instrumentalities the indemnitor necessarily knows that he is assuming full responsibility for losses in connection with those particular premises or instrumentalities, regardless of whose negligence may cause the losses. *Joe Adams & Son v. McCann Construction Company, supra; Spence & Howe Construction Co. v. Gulf Oil Corp., supra; James Stewart & Co. v. Mobley,* 282 S.W.2d 290 (Tex.Civ.App.—Dallas 1955, writ ref'd). Here the contract does not clearly and unequivocally provide for indemnity against injuries or damages caused by defects or resulting from the maintenance or operation of the pipe line so as to bring it within the general rule or even the so-called exception thereto.

The requirement that a contract of indemnity to protect the indemnitee against his own negligence be expressed in clear and unequivocal terms does not impose any great hardship on the contracting parties. Ordinarily, one does not contract against the results of his own negligence. *Spence & Howe Construction Co. v. Gulf Oil Corp., supra.* Here the contract was drafted by respondent after protracted negotiation by the parties. Surely had indemnity been intended, the contract would have so provided without the necessity for a strained construction of express covenants to the contrary.

In view of the conflicting provisions, the contract does not clearly and unequivocally require petitioner to indemnify respondent from losses proximately caused by respondent's negligence. The trial court did not err in denying respondent indemnity for the damages caused by its stipulated negligence.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

GARWOOD, J., not sitting.