751 F.2d 746
 GULF OIL CORPORATION, Plaintiff-Appellee, Cross-Appellant,
v.
BURLINGTON NORTHERN RAILROAD, INC. Successor in interest to
St. Louis-San Francisco Railway Co.,
Defendant-Appellant, Cross-Appellee.
 No. 84-2101.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1985.
 
 Henderson, Bryant & Wolfe, Joseph W. Wolfe, Ronald H. Clark, Sherman, Tex., for defendant-appellant, cross-appellee.
 Harry P. Davis, Jr., Houston, Tex., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 Burlington Northern Railroad appeals from a judgment in favor of Gulf Oil Corporation, the lessee of its track, and from the dismissal of its counterclaim for indemnity under the lease. The suit arose from an accident caused when Gulf railroad cars rolled from the leased siding and caused substantial damage. A jury found that the railroad's negligence allowed the cars to roll from the leased track. The district court held that under Texas law the indemnity provision of the lease did not cover the railroad's negligence. We disagree. The judgment is reversed and the case is remanded for entry of judgment in favor of Burlington.
 
 
 2
 * Gulf Oil Corporation leased track located in Denison, Texas from the St. Louis-San Francisco Railway Company. Burlington Northern Railroad is Frisco's successor-in-interest. Frisco employees, pursuant to the lease, placed nine of Gulf's railroad cars loaded with polypropylene on the leased track. Frisco employees attached to the track a device designed to derail the cars should they start to roll. The cars rolled through the device, entered the main track and collided with a Frisco train five miles down the line. Gulf's railroad cars and plastic products and Frisco's train, main line track and signal sustained extensive damage. Gulf sued Burlington for negligence and breach of the lease for failure to properly install and maintain derail devices adequate to prevent Gulf's cars from entering the main line. Burlington counterclaimed for recovery of its damages pursuant to the indemnity provision in the lease. The jury found for Gulf on the negligence and contract claims, and the court, whom the parties requested determine the issue, dismissed Burlington's suit for indemnity.
 
 II
 
 3
 Burlington contends the district court erred in denying indemnity pursuant to paragraph eight of the lease:
 
 
 4
 Lessee [Gulf], in further consideration of the lease herein granted, hereby assumes all responsibility and liability for, and expressly covenants and agrees to protect, indemnify and save harmless Frisco from and against any and all loss, cost, damage or expense in consequence of death of or injury to persons whomsoever, or loss or destruction of or damage to property whatsoever, in any manner caused by, resulting from or incident to storage of private cars on said track, or resulting from or growing out of any failure of Lessee to comply with or perform any of the obligations, terms and conditions on Lessee's part to be complied with or performed hereunder.
 
 
 5
 (emphasis added.) Burlington argues that by agreement risks associated with the railcar storage were shifted to Gulf. Gulf maintains that the shifted hazards did not include the risk of railroad negligence because Texas law requires that an indemnification of one's own negligence be explicitly expressed.
 
 
 6
 In this diversity suit, decisions of Texas courts control. Texas courts will enforce contracts indemnifying a party against his own negligence. Goodyear Tire and Rubber Co. v. Jefferson Construction Co., 565 S.W.2d 916, 920 (Tex.1978); Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631, 633 (Tex.1963); Delta Engineering Corp. v. Warren Petroleum, Inc., 668 S.W.2d 770, 772 (Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). Indemnity provisions, however, will be strictly construed and generally "will not protect an indemnitee against his own negligence unless the obligation of the indemnitor to do so is expressed in clear and unequivocal terms." Eastman Kodak Co. v. Exxon Corp., 603 S.W.2d 208, 211 (Tex.1980) (emphasis in original); Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co., 490 S.W.2d 818, 822 (Tex.1972); Joe Adams & Son v. McCann Construction Co., 475 S.W.2d 721, 723 (Tex.1971). See also Haywood v. Southwestern Electric Power Co., 708 F.2d 163, 166 (5th Cir.1983); McClane v. Sun Oil Co., 634 F.2d 855, 858 (5th Cir.1981); Chevron Oil Co. v. E.D. Walton Construction Co., 517 F.2d 1119, 1121 (5th Cir.1975). Texas does not require that the word "negligence" be used, but does require "that the parties state in so many words, that they intend to save the indemnitee harmless from liability for his own negligence." Fireman's Fund, 490 S.W.2d at 822.
 
 
 7
 At one point in the development of Texas indemnity law, the Texas Supreme Court identified certain "exceptions" to the "clear and unequivocal" rule, one of which involved "agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality." Id. at 822.[1] Later that court recognized that the exceptions were actually specific applications of its requirement that an indemnity of one's own negligence be clearly expressed. Eastman Kodak, 603 S.W.2d at 212. For example, the specific premises exception is but "an application of the general rule, for when indemnity is clearly expressed with reference to specific premises or instrumentalities the indemnitor necessarily knows that he is assuming full responsibility for losses in connection with those particular premises or instrumentalities, regardless of whose negligence may cause the losses." Id. (emphasis in original.) The rationale of Eastman Kodak also explains prior Texas cases.
 
 
 8
 In Houston & Texas Central Railroad Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, modified on rehearing on other grounds, 111 Tex. 18, 24, 226 S.W. 140 (1920), a brick company contracted to "save the [railroad] harmless from any and all claims for damages arising from any cause whatsoever growing out of the construction, maintenance and operation of [a] spur track ". (emphasis added). Indemnity was ordered despite the fact the indemnity clause did not explicitly refer to the railroad's own negligence. Similarly, in Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, 779 (1957), a lessee, who had contracted to accept the leased premises, waive "defects therein and ... hold the Lessor harmless from all claims for any such damage," was held to have clearly assumed any and all liability arising from the use of the leased building, including that generated by the lessor's negligence. In St. Louis Southwestern Railway Co. v. Lyons, 486 S.W.2d 890 (Tex.Civ.App.--Beaumont 1972, writ ref'd n.r.e.), a feed company had entered into an "Industrial Track Agreement" with several railroads for the use of certain spur track. Two railcars rolled from this track onto the main line and collided with a truck at an intersection. The negligent railroads sued the feed company for indemnity under the track agreement which required the lessee to indemnify them "against all liability, loss, damage or expense, occasioned by, arising from or incident to the moving of ... any freight cars located on said track." Id. at 891. This language obligated the feed company to indemnify the railroads for the truck driver's damages, held "occasioned by, arising from or incident to" a "specified operation, i.e., moving of any freight cars, without regard to fault." Id. at 892.[2]
 
 
 9
 By its "clear and unequivocal" rule, Texas ensures that a contracting party is put on "fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party." McCann, 475 S.W.2d at 724, quoting Spence & Howe Construction Co., 365 S.W.2d 631 (Tex.1963). See also Chevron Oil Co., 517 F.2d at 1122; Goodyear Tire and Rubber Co., 565 S.W.2d at 920. When indemnity is clearly provided with respect to a specific instrumentality, operation, or premise, this "fair notice" objective is satisfied, for the indemnitor "ordinarily knows and certainly should be aware he is assuming full responsibility" for those premises. McCann, 475 S.W.2d at 724.
 
 
 10
 We are persuaded that Gulf Oil had "fair notice" that it assumed full responsibility for damages incident to the storage of the hopper cars on the leased tracks. Gulf agreed to indemnify Frisco for "any and all loss ... in any manner caused by, resulting from or incident to storage of private cars on said track...." (emphasis added). The contract thus encompassed both a specified operation--"storage of private cars," and a specified premise--"on said track", and then expanded coverage by use of the words "incident to."
 
 
 11
 Gulf insists that we strictly construe the contractual language and hold it inapplicable to this accident which occurred five miles from the "said" leased track and which involved "movement" rather than "storage" of the cars. Gulf's construction, however, ignores the contractual language "caused by, resulting from or incident to," (emphasis added), which expressly extends indemnity to both direct and indirect loss. Gulf knew or should have known it was assuming full responsibility for damages in any way connected to "storage of private cars on said track." In any event, this accident began when the cars started their roll. They did not roll out from under the indemnity at some undefined point in their passage.
 
 
 12
 Finally, Gulf argues that because the jury also found that Burlington breached the lease in supplying defective derails, Gulf is excused from performing its dependent obligation to indemnify under the lease.[3] That Gulf could reasonably anticipate that any negligence of Burlington would be in connection with its obligation under the lease, and thus coincidentally breach its terms, is implicit in the conclusion that Gulf's indemnity included the negligence of Burlington. Because the risk of injury from the railroad's negligent performance was by agreement placed with Gulf, that negligence is by definition no breach of the contract sufficient to excuse Gulf's performance. Gulf's argument begs the central question of the scope of indemnity and robs the indemnity clause of its intended meaning.
 
 III
 
 13
 In dismissing Burlington's counterclaim for its own damages the lower court denied the indemnity clause its full efficacy. As we have explained, Gulf's obligation to indemnify was contractual and unaffected by Burlington's fault. In return for storage track and lower freight rates, Gulf bound itself to indemnify the railroad "against any and all loss or destruction of or damage to property whatsoever, ... incident to storage of private cars on said track." The Frisco locomotives, main line track and railroad signal were damaged in the same collision that injured Gulf's cars and products. All are "losses" "incident to storage" and within the grasp of the indemnity clause. As Gulf is contractually bound to indemnify Burlington for "all" such losses, the judgment in its favor is reversed and the cause remanded for entry of judgment in favor of Burlington for its stipulated damages. In view of this disposition, we need not address Burlington's other contentions or Gulf's cross-appeal for pre-judgment interest.
 
 
 14
 REVERSED AND REMANDED.
 
 
 
 [1]
 In addition to the "specific premises or instrumentalities" exception, the Texas Supreme Court has enunciated two other exceptions to the "clear and unequivocal" rule. These concern "agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract," and "contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees...." Fireman's Fund, 490 S.W.2d at 822 (citations omitted)
 
 
 [2]
 See also Spence & Howe, 365 S.W.2d at 637 (indemnity for any damages growing out of work covered by subcontract for setting and piling of propane tanks); James Stewart & Co. v. Mobley, 282 S.W.2d 290, 294 (Tex.Civ.App.--Dallas 1955, writ. ref'd) (use of hoist specifically covered by indemnity agreement). Cf. Esco Elevators, Inc. v. Brown Rental Equipment Co., Inc., 670 S.W.2d 761, 763-64 (Tex.App.--Fort Worth, 1984, no writ) (indemnity denied when lessor negligently furnished mistaken lifting device under contract indemnifying loss from use of "equipment covered by lease agreement")
 
 
 [3]
 Paragraph 3 of the lease provided: "Frisco shall, at its expense, maintain said track. Frisco shall, at Lessee's expense, install and maintain such derail or derails as may be deemed necessary by Frisco in connection with the use by Lessee of said track hereunder."