Tommy Wiley SINGLETON, Appellant,

v.

CROWN CENTRAL PETROLEUM
CORPORATION, Appellee.

No. 01–84–0479–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 1985.
Rehearing Denied June 12, 1986.

Valorie W. Davenport, Stradley, Barnett & Stein, P.C., Rayburn P. Putney, Houston, for appellant.

Michael G. Terry, Vinson & Elkins, Houston, for appellee.

Before SAM BASS and DUNN and QUENTIN KEITH (Retired, Sitting by Assignment), JJ.

## OPINION

QUENTIN KEITH, Justice (Retired, Sitting by Assignment).

This is an appeal from a take-nothing judgment.

We affirm.

A personal injury suit brought by Tommy Wiley Singleton, the appellant, sought to recover actual damages for injuries he sustained in July 1981, while on the premises of Crown Central Petroleum Company. Singleton had made a delivery for his employer, Pro-Fab Fabricators, driving his truck out of the Crown plant when David Waller, an employee of Mundy Construction Company, a contractor for Crown, drove a forklift into an overhead pipe rack. The pipe containing liquified petroleum gas

ruptured, and appellant's truck was engulfed by a cloud of flammable gas, which was apparently ignited by the truck's engine. The subsequent explosion and fire seriously burned the appellant.

Appellant sued Crown for actual and punitive damages, and Mundy for actual damages. Crown, as a third-party plaintiff, sued Mundy Construction and Mundy Service Corp., as third-party defendant, to enforce an indemnity clause in the contract between Crown and Mundy. Before trial, appellant settled his claim for punitive damages against Crown for $300,000 and then settled for actual damages against Mundy Construction for $600,000. The settlement agreement between appellant and Mundy included a paragraph where appellant agreed to indemnify Mundy from any cost or expense arising from any further claims, liability, costs, or expenses from injuries or damages sustained by the appellant, including claims for indemnity between Crown and Mundy.

The case proceeded to a jury trial on the issue of Crown's ordinary negligence and Crown's right to indemnification from Mundy under their written contract. In response to special issues, the jury found that Crown had negligently maintained a dangerous condition on its premises, which was the proximate cause of appellant's injuries; that Waller drove his forklift into the pipe rack, which caused the pipe to rupture and release the flammable gas; that the accident was not the result of the sole negligence of Crown; and that awarded $913,852.87 as compensatory damages to appellant.

In the final judgment against Crown, the trial court found that appellant had previously settled with Mundy for $600,000. The negligence, and percentage of negligence, attributable to Mundy Construction Company and Mundy Service Corporation was not submitted to the jury. The court ordered, pursuant to Tex.Rev.Civ.Stat.Ann. art. 2212a, sec. 2(d) (Vernon 1985), that the $913,852.87 award be reduced by $600,000 to $313,852.87. The court also ordered Mundy to indemnify Crown, based on the written contract between them. Finally, the court ordered the appellant to indemnify Mundy based on the written indemnity clause in their settlement agreement. From the judgment that appellant take nothing, this appeal is perfected.

The appellant argues his first and second points of error together, asserting that the trial court erred: (1) in awarding indemnity to Crown, because the language of the parties' agreement did not clearly and unequivocally state that Mundy intended to indemnify Crown for liabilities that were the result of its own negligent acts; and (2) in holding that the exception found in the agreement, which excluded indemnification for claims arising out of the sole negligence of Crown, was sufficient to require that Mundy indemnify Crown under the contract. The relevant indemnification clause between Crown (owner) and Mundy (contractor) is as follows:

17.0 INDEMNIFICATION AND LIENS

17.1 Contractor agrees to protect, defend, indemnify and hold Owner, its agents, servants, employers, officers, directors, subsidiaries and affiliates, harmless from and against any and all claims, demands, actions, liabilities, liens, losses, damages, and expenses, of every kind and character whatsoever, including without limitation by enumeration the amount of any judgment, penalty, interest, court costs and legal fees incurred in connection with the same, or the defense thereof, for or in connection with loss of life or personal injury (including employees of Contractor and of Owner), damage to property (including property of Contractor and of Owner), and without limitation by enumeration all other claims or demands of every character whatsoever directly or indirectly arising out of, or incident to, or in connection with, or resulting from the activities of Contractor, its agents, servants, and employees, or its subcontractors and their agents, servants, and employees, or in connection with the work to be performed, services to be rendered, or materials to be fur-

nished, under this contract, *excepting only claims arising out of accidents resulting from the sole negligence of Owner. Contractor further agrees that upon notice by Owner it will immediately investigate, handle, respond to, provide defense for and defend any such claims, demand or action at its sole expense and will bear all other costs and expenses related thereto, even if the same is groundless or fraudulent. Contractor's obligations under this section 17.1 shall be limited to the amounts and coverages of insurance furnished by the Contractor under this Contract.*

(Emphasis added).

 Texas courts have enforced contracts indemnifying a party against its own negligence. *Goodyear Tire and Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916, 920 (Tex.1978) (indemnity provision that said it is the intention of seller that such indemnity shall apply whether or not the liability, claims, demands, or suits arise from the negligence of purchaser was clearly expressed and gave fair notice of the obligation); *Spence & Howe Construction Co. v. Gulf Oil Corp.*, 365 S.W.2d 631, 633–34 (Tex.1963) (language providing that seller agrees to be responsible for and to indemnify and save harmless the purchaser from all loss or damage and any or all claims arising by reason of accidents, injuries, or damage to any persons or property in connection with such work was held to mean that Gulf's negligence was encompassed by the indemnity provision). Indemnity provisions will be strictly construed and "will not protect an indemnitee against his own negligence unless the obligation of the indemnitor to do so is expressed in *clear and unequivocal terms.*" *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208, 211 (Tex.1980); *Fireman's*

*Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 822 (Tex.1972); *Joe Adams & Son v. McCann Construction Co.*, 475 S.W.2d 721, 723 (Tex.1971); *Gulf Oil Corp. v. Burlington Northern Railroad, Inc.*, 751 F.2d 746, 748 (5th Cir.1985). While there is no requirement that the word "negligence" be expressly used, the courts require "that the parties state, in so many words, that they intend to save the indemnitee harmless from liability of his own negligence." *Fireman's Fund Insurance Co.*, 490 S.W.2d at 822.

In stating that broad general statements of the indemnity obligations are not sufficient to protect an indemnitee from his own negligence, the Texas Supreme Court in 1972 set out three exceptions.[1] In a later case, that court interpreted those exceptions and concluded that the "exceptions" were not really exceptions but were, in reality, applications of the general rule that an indemnity clause will not protect the indemnitee against his own negligence unless the obligation of the indemnitor to do so is expressed clearly and unequivocally. *Eastman Kodak Co.*, 603 S.W.2d at 212.

Ordinarily, one does not contract against the results of one's own negligence. *Spence & Howe Construction Co.*, 365 S.W.2d at 633. The purpose of the "clear and unequivocal" rule is to put the contracting party on "fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party." *Id.* at 634.

In determining whether Mundy had fair notice and whether the obligations of the indemnitor were stated in clear and unequivocal terms, the reader sees the first

---

1. The exceptions are: (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality ...; (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract ...; and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees ... *Fireman's Fund Insurance Co.*, 490 S.W.2d at 822.

reference to indemnification in sec. 4.2(6) of the contract, which states:

Prior to final payment by the Owner of this final invoice, and as a reciprocal condition for the making of such payment, the Contractor shall furnish a Certificate properly executed by its duly authorized officer, as follows:

... (6) A Covenant to *continue to indemnify, save harmless* and forever defend *Owner and Owner's plant and premises from and against all claims,* as defined in Section 17.1 and 18.0 of the annexed General Terms and Conditions (Exhibit C), *of others against Contractor or Owner* and *arising out of the performance of the Work.*

(Emphasis added.)

█ The reader is then referred to sec. 17.1. The language of the contract in sections 4.2(6) and 17.1 provides a clear and unequivocal expression of the intent of the parties that Mundy indemnify Crown against all claims for or in connection with loss of life or personal injury (including employees of Contractor and of Owner), damage to property (including property of Contractor and of Owner), and all other claims whatsoever directly or indirectly arising from the activities of the Contractor or in connection with the work to be performed under the contract, except claims arising out of the sole negligence of the Owner. Such language puts Mundy on fair notice of its obligation to indemnify Crown. The language in the contract meets the clear and unequivocal exception and expresses the intended obligation of Mundy to indemnify Crown against the consequences of Crown's own negligence, except for claims arising out of the sole negligence of Crown. *See Delta Engineering Corp. v. Warren Petroleum, Inc.,* 668 S.W.2d 770, 771 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Sun Oil Co. v. Massey,* 594 S.W.2d 125, 134 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Appellant's first and second points of error are overruled.

The appellant presents points of error three and four together, arguing that the trial court erred in entering a final judgment for indemnity, absent a finding of proximate cause and in refusing judgment for Mundy, because the jury's answer to special issue number 11 is incorrect as a matter of law. In response to points of error three and four, appellee raises the cross-point that the trial court erred in overruling Crown's motion for an instructed verdict.

The appellant urges that Crown must prove each of the essential elements of negligence before Crown has a right to indemnification. In determining whether Crown is entitled to be indemnified, one must first look to the contract between Mundy and Crown. Crown's claim of indemnity is based on contract. The written agreement says that Mundy will indemnify Crown against any and all claims in connection with personal injuries that arise out of, are incident to, are in connection with, or result from the activities of the indemnitor and are not the result of the sole negligence of the indemnitee. The contract contains no limiting language that restricts Mundy's obligation to indemnify Crown to claims where only Mundy's negligence proximately caused the injury. There is also no wording in the contract that says that Crown must prove the essential elements of negligence against Mundy before the indemnity clause in the contract becomes operative. The cases which the appellant cites do not support the position that a finding of Mundy's negligence was a prerequisite to Crown's claim for indemnification under the contract. *See, e.g., Young v. Kilroy Oil Co. of Texas,* 673 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Phillips Pipeline Co. v. Richardson,* 680 S.W.2d 43 (Tex.App.—El Paso 1984, no writ); *Sun Oil Co. v. Massey,* 594 S.W.2d at 125; *Amoco Chemicals Corp. v. Sutton,* 551 S.W.2d 459 (Tex.Civ.App.— Eastland 1977, writ ref'd n.r.e.).

Where an indemnitor contended that the indemnity contract was not operative because there was no jury finding that its act or omission or negligence was a proximate cause of death, the appellate court held

"that a finding of proximate cause is not a prerequisite to liability for indemnity." *Lone Star Industries, Inc. v. Atchison, Topeka, & Santa Fe Railway, Co.*, 666 S.W.2d 376, 379 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.). The court found that Lone Star's liability for indemnity was clearly established under the provisions of the written agreement between Lone Star and Santa Fe, unless it was necessary to establish that Lone Star's acts, omissions, or the breach of its obligations were the proximate cause of the occurrence. The court said such a finding was not necessary. *Id.* at 379.

A contractor was not indemnified where the written agreement provided that the contractor was entitled to indemnity from the subcontractor *only* if the death of (plaintiff) were caused "in whole or in part by any negligent act or omission of the Subcontractor." *Coastal Construction Co. v. Tex-Kote, Inc.*, 571 S.W.2d 400, 404 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). A special issue was submitted concerning the negligence of the subcontractor, Tex-Kote, but a negative answer was returned by the jury. Because the written agreement between Coastal and Tex-Kote limited Coastal's right to indemnification to claims caused in whole or in part by the negligent act or omission by Tex-Kote, the court held that Coastal had the burden of establishing that Tex-Kote was causally negligent. *Id.* at 408.

■ Under the terms of the written agreement, Mundy agreed to indemnify Crown for all claims of personal injury directly or indirectly arising out of the activities of Mundy or in connection with the work to be performed, except for the sole negligence of Crown. The clause does not require a precise finding of fact that the injury arose out of the negligence of Mundy. The fact findings were sufficient to impose upon Mundy the indemnification obligation. *See Howard P. Foley Co. v. Cox*, 679 S.W.2d 58 (Tex.App.—Houston [14th Dist.] 1984, no writ). Appellant's third point of error, being without merit, is overruled.

■ In the fourth point of error, the appellant maintains that the jury's answer to special issue number 11, which inquired whether the accident in question was the result of Crown's sole negligence, is incorrect as a matter of law. To determine a "no evidence" or "matter of law" point, this Court must disregard all evidence contrary to the trial court's finding, and if there is any remaining evidence that would support the verdict or judgment, the trial court's judgment must be upheld. If, after the removal of all contrary evidence, this Court finds an absence of any evidence that would support the verdict or judgment, a contrary conclusion to the verdict or judgment is required as a matter of law. *Mack v. Moore*, 669 S.W.2d 415, 418 (Tex. App.—Houston [1st Dist.] 1984, no writ).

[5] The record shows that Waller was acting within the scope of his employment for Mundy Construction Company, driving a forklift down an access road in the Crown plant. That road was crossed by a number of overhead pipe racks. The testimony shows that the forklift, driven by Waller, hit one of the overhead pipes and ruptured it, and a cloud of flammable gas escaped. There is ample evidence to support the jury's answer to special issue 11 that the accident on July 15, 1981, did not result from the sole negligence of Crown; thus, appellant's fourth point of error is overruled.

■ The appellee's cross-point challenges the legal sufficiency of the evidence because a motion for directed verdict is proper only if there is no evidence of probative value upon which a jury could make its findings. *Banquete Independent School District v. Tenneco, Inc.*, 618 S.W.2d 824, 827 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). The record shows that Crown was responsible for having the propane gas line extend across the road crossing. There is evidence, in the record, showing that the gas line at the road crossing was a dangerous condition created by and known to Crown. The evidence shows that Crown's failure to make the refinery

reasonably safe for appellant was a proximate cause of the accident. A fact issue was raised, and the trial court properly overruled Crown's motion for an instructed verdict. Appellee's cross-point is overruled.

In response to the appellant's point of error number five that the trial court erred in submitting the issue of sole negligence, the record reflects that the appellant stipulated to the submission of the special issue. The appellant's fifth point of error is overruled.

■ The appellant next complains, in his sixth point of error, that the trial court erred in granting Crown indemnity because the contract between Mundy and Crown is unenforceable as a matter of law. The specific claim is that the contract should be unenforceable because article 2212b prohibits indemnity agreements pertaining to a well site for oil, gas, or water, or a mine for any mineral. Tex.Rev.Civ.Stat.Ann. art. 2212b (Vernon Supp.1985). This statute is inapplicable to the construction contract between Crown and Mundy. Appellant's sixth point of error is overruled.

■ In his final point of error, the appellant asserts that the trial court erred in awarding Crown a $600,000 credit for amounts paid by Mundy to appellant in settlement. The appellant settled his claim against Mundy, prior to the trial, for $600,-000. Special issues were submitted to the jury that included issues inquiring about the conduct of Waller. However, none of the issues submitted inquired whether Waller's conduct constituted negligence or whether Mundy was negligent. Under the language of article 2212a, sec. 2(d), if an alleged joint tortfeasor pays an amount to a claimant in settlement, but is dismissed after settlement with the claimant, each defendant is entitled to deduct from the amount for which he is liable to the claimant a percentage of the amount of the settlement based on the relationship the defendant's own negligence bears to the total negligence of all defendants. Tex. Rev.Civ.Stat.Ann. art. 2212a, sec. 2(d) (Vernon Supp.1985). After the settlement between the appellant and Mundy, Crown was then the only defendant. It appears from the statute that Crown is allowed to deduct from the amount for which it is liable, 100% of the settlement between Mundy and the appellant. The nonsettling defendant is entitled to deduct the face amount of the promised settlement from the damages for which the nonsettling party is liable. *Rose v. Pfister*, 607 S.W.2d 587, 589 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). The record indicates that the appellant stipulated that Crown was entitled to a $600,000 credit against any judgment in favor of the appellant and against Crown. The seventh point of error is overruled.

■ In a second cross-point, the appellee maintains that the trial court erred in excluding the real nature of the settlement agreement between the appellant and Mundy Construction. Prior to the trial, the appellant stipulated that he had entered into a written settlement agreement with Mundy, where in exchange for $600,000 from Mundy, the appellant agreed to release Mundy, gave a covenant not to sue Mundy, agreed to indemnify Mundy from any further claims, liability, costs, or expenses arising from any injuries or damages sustained by the appellant from the accident, and assigned to Mundy the appellant's claim against Crown.

When Crown attempted to introduce evidence of the financial agreement between the appellant and Mundy, the trial court excluded the evidence. The general rule in Texas is that settlement agreements between the plaintiff and a co-defendant should be excluded from a jury. *McGuire v. Commercial Union Insurance Co.*, 431 S.W.2d 347 (Tex.1968). An exception to this rule is the "Mary Carter" agreement, where a plaintiff releases his cause of action against one joint tortfeasor and promises to pay (or credit) the settling tortfeasor, who remains a party at trial, a portion of the recovery obtained against the nonsettling defendant. The Texas Supreme Court has held that such agreements are admissible in evidence to im-

peach the testimony of the settling defendant by showing his financial interest in the outcome of the suit. *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex. 1977). That court has also held that a settlement agreement is not a "Mary Carter" agreement, and is therefore not admissible, where the settling defendant did not acquire a financial interest in the plaintiff's recovery against the nonsettling defendant. *Miller v. Bock Laundry Machine Co.,* 568 S.W.2d 648, 652 (Tex.1977).

The evidence before this Court reveals two different written instruments, defendant's exhibit 40A and plaintiff's exhibit 49, both purporting to be the release agreement between the appellant and Mundy and both signed by the appellant. In both exhibits, the release contains an indemnity clause where the appellant agrees to indemnify Mundy from, among other things, "any cost or expense whatsoever arising ... from any further claims, liability, costs, or expenses arising from any injuries or damages" sustained by the appellant. That clause specifically includes claims for contribution or indemnity arising from the causes of action asserted by the appellant against Crown. If the appellant wins a judgment against Crown, and Mundy indemnifies Crown under the Crown-Mundy contract, then by the terms of this indemnification clause in the release agreement, the appellant has agreed to indemnify Mundy.

In the defendant's exhibit 40A, the release agreement includes an assignment clause whereby the appellant assigns in full any and all claims and causes of action arising from the accident to Mundy. The assignment includes "that portion of any judgment in favor of Singleton against ... Crown Central Petroleum Corporation, equal in amount to the entire judgment which [Crown] may recover over against Mundy in this action under a claim for indemnity or contribution." Plaintiff's exhibit 49 has some confusing and contradictory changes in the assignment clause. That version of the release agreement states that appellant assigns "that portion of any judgment in favor of Singleton

against ... Crown Central Petroleum Corporation, equal in amount to the entire judgment which [Crown] may recover over against Mundy in this action under a claim for indemnity or contribution." Then there is a handwritten statement added that states "under no circumstance is defendant Mundy to recover any money back from Singleton," which is initialed by the appellant, appellant's attorney, and the attorney for Mundy. That amended version, however, does not make the assignment *to anyone.*

The test for the Mary Carter agreement is whether the settling defendant had a financial stake in the success of the plaintiff's recovery such that the agreement altered the posture of the parties and induced the settling defendant to promote the plaintiff's cause of action against the nonsettling defendant. *City of Houston v. Sam P. Wallace and Co.,* 585 S.W.2d 669 (Tex.1979). Although there occurred a surprise change of posture in *City of Houston,* the Texas Supreme Court held in another case that an agreement where a plaintiff received $100,000 from a settling defendant (who then no longer remained as a defendant in that cause of action) and also agreed to repay the settling defendant out of any recovery from the nonsettling defendant is a Mary Carter agreement that should not have been excluded from the jury. *Bristol-Myers Co. v. Gonzales,* 561 S.W.2d 801, 805 (Tex.1978).

Under the terms of the release agreement in plaintiff's exhibit 49, if Crown was found to be solely negligent then the appellant gets a judgment, and Crown is not entitled to indemnification from Mundy; but neither is Mundy to be indemnified or to receive an assignment of that judgment from the appellant. If Crown was found liable but not solely negligent (as the trial court in fact did find), then the appellant would get a judgment, but Crown would be entitled to indemnification from Mundy, and Mundy would be entitled to indemnification from the appellant in the amount that Mundy paid in indemnity to Crown. The financial interests of the appellant and

Mundy are not the same. The trial court properly excluded the evidence from the jury. Appellee's cross-point is overruled, and the judgment is affirmed.