**SUN OIL COMPANY et al., Appellants,**

v.

**Sarah Sue MASSEY et al., Appellees.**

No. 17495.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 13, 1979.
Rehearing Denied Jan. 24, 1980.

Crain, Caton, James & Oberwetter, Newton M. Crain, Jr., Bean & Manning, Frank Bean, Houston, for appellants.

Helm, Pletcher, Hogan & Burrow, Michael Y. Saunders, Burks & Brush, Kirk Brush, Houston, for appellees.

Before PEDEN, EVANS and WARREN, JJ.

PEDEN, Justice.

Sun Oil Company, its employee Henry Preslar, and J.F.P. Well Service, Inc. appeal from the judgment of the trial court in favor of the plaintiffs, Sarah Sue Massey and members of her family. In January of 1973, plaintiffs brought suit under Article 4671 et seq. of Vernon's Texas Civil Stat-

utes, the Texas Wrongful Death Act, against Sun, Preslar, and Gulf States Utilities Company, seeking to recover damages for the death of James W. Massey, in March, 1972, while he was working at a Sun oil well site. The complaint against Gulf States was transferred to Jefferson County on a change of venue.

Sun [1] later impleaded J.F.P. Well Service, Massey's employer and the independent contractor which was conducting a workover operation on the well when Massey was killed, alleging that under the provisions of their service contract Sun was entitled to indemnity from J.F.P. for any damages awarded against it to the plaintiffs.

The trial court entered judgment based on the jury verdict against Sun for a total of $309,559.76 in damages and in favor of Sun against J.F.P. for the full amount.

Sun's thirteen points of error constitute five basic contentions: 1) that there was insufficient evidence to support the jury's finding that Sun was negligent in failing to make the premises reasonably safe for Massey; 2) that there was insufficient evidence to support the jury's findings that Sun failed to warn Massey of the alleged unsafe condition and that such failure was a proximate cause of the accident; 3) that the trial judge erred in failing to find that Massey was guilty of negligence per se in violating the provisions of Article 1436c, Tex.Rev.Civ. Stat.; 4) that the trial court erred in refusing to set aside the jury's verdict because of conflicting answers to certain special issues, which conflict Sun alleges is indicative of jury bias in favor of the plaintiffs; and 5) that the trial court erred in entering judgment against Preslar, since no special issues concerning him were submitted to the jury or requested by any party.

J.F.P. assigns forty-one points of error, thirty-four of which duplicate issues raised by Sun. Six points attack the sufficiency of the evidence to support jury findings that J.F.P. was negligent and that its negli-

gence was a proximate cause of the accident. J.F.P.'s forty-first point of error attacks the judgment against it in favor of Sun on the grounds that the indemnity agreement does not afford Sun protection against the consequences of its own negligence.

The judgment of the trial court is affirmed except that as to Preslar it is reversed and judgment rendered that the plaintiffs take nothing.

## Facts

Sun Oil Company owned several pumping oil wells in the general area where the accident occurred. From time to time J.F.P. Well Service conducted reworking operations on Sun's wells, pursuant to a written service contract. In March of 1972, James Massey was a member of one of J.F.P.'s workover crews. Three other men worked under him, and in the absence of the crew's foreman, Charles Kellar, Massey was in charge.

The pump on Sun's Foster 31 well was powered by electricity supplied by visible high voltage overhead power lines. On March 13 the J.F.P. crew moved to the Foster 31 well site to begin reworking operations. In order to anchor their rig and prevent it from toppling or being blown over, one of their first tasks was to run guy wires from the top of the derrick to the ground. They had strung out and anchored two or three of them and were in the process of running another, when the cable they were handling was pulled into one of the power lines. Three members of the crew, including Massey, were electrocuted.

## Dangerous condition

In response to the first five special issues, the jury found that Sun created or maintained a dangerous condition, that it knew or should have known about the danger, that it failed to remedy it by making the premises reasonably safe for Massey on the occasion in question, that such failure was negligent, and that the negligence was a

---

1. Unless the context clearly indicates otherwise, all further references to Sun include both Sun and Preslar.

proximate cause of the accident. Sun and J.F.P. contend that there is insufficient evidence to support any of these findings.

Sun contends that the well site was safe because the power lines were clearly visible and because the guy wires could have been anchored in such a way that they would not have come in contact with the power lines. The evidence as to the latter contention is conflicting. Sun presented testimony that the guy wires could have been strung out in different directions so as to avoid the power lines altogether or could have been safely anchored closer to the rig without coming too near the lines. The plaintiffs, however, presented evidence that in order to provide proper support for the rig the cables had to be anchored as far out as the crew was attempting to anchor them and that the way the cables were strung was the only proper way to guy the derrick.

We cannot say the danger was open and obvious. It was stated in *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452, at 459 (Tex.1972):

> When one speaks of a condition as being open and obvious, the phrase means that there is no dispute in the evidence *or* the facts which will charge an invitee with knowledge and full appreciation of the nature and extent of danger. It means that knowledge and appreciation of the danger are considered as proved as a matter of law.

In our case there was a dispute in the evidence as to facts that would charge Massey, a business invitee, with knowledge and full appreciation of the nature and extent of the danger in encountering the power lines in question. There is evidence that the crew members were misled into believing the power in the lines had been shut off. Under the circumstances, the hazard posed by the live power lines was not obvious despite their visibility, since the location of the lines was only one component of the danger, the other being that they were charged with electricity.

Mr. Newman, the crew member who survived the accident, testified that someone from Sun had told them that the well had been shut in and was ready to be worked on. They took that to mean that the power had been cut off. His crew didn't need electrical power for its operations, and all of its members thought the power was off.

We hold that the evidence of the location and charging of the lines did not amount to proof of knowledge of danger on Massey's part and did not establish his negligence as a matter of law. See *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520 (Tex.1978).

It appears that the accident which caused Massey's death would not have occurred either if the lines had been located further away from the well or if the current had been turned off prior to the beginning of workover operations, and the jury could have concluded that Sun had control over both of these conditions. There was evidence that Sun was at least partly responsible for the initial placing of the power lines unusually close to the well and also that Sun could have arranged for the electricity to be temporarily disconnected. It is obvious that Sun knew the power lines were there, close to the well. Moreover, the evidence supports the inference that its people knew or should have known that the current was on.

Thus, there was ample evidence to support the jury's findings that Sun created or maintained a dangerous condition which it knew or should have known about, that it failed to make the premises safe, and that its failure was a proximate cause of the accident. J.F.P. argues that even if that were true, Sun was still not guilty of negligence, because it breached no legal duty owed to Massey.

In order to be guilty of actionable negligence, a defendant must owe a legal duty to protect the plaintiff against injury. See generally 40 Tex.Jur.2d Rev., Part 2, Negligence § 4, and cases cited therein. When, as in this case, the defendant is an occupier of land and the plaintiff is an invitee, the defendant owes a duty to exercise ordinary care to maintain the premises in a reasonably safe condition or to warn

the invitee of any dangerous conditions which the occupier knows or should know about and which are not reasonably apparent to the invitee. See generally 40 Tex. Jr.2d Rev., Part 2, Negligence §§ 44–45, 50–52, and cases cited therein; 2 Restat. of Torts 2d § 343; *Halepeska v. Callihan Interests*, 371 S.W.2d 368 (Tex.1963).

The jury found that Sun had created or maintained a dangerous condition which it knew or should have known about and that it failed to make the premises in question safe for Massey. As was pointed out above, there was ample evidence presented to support those findings. Moreover, although no special issue was submitted which directly addressed the question of Massey's awareness of the danger, there was again ample evidence to support the inference that he did not know that the electricity was turned on. The single remaining question is whether Sun gave an effective warning of the danger.

### Failure to warn

In response to two special issues submitted over objections, the jury found that Sun failed to give the warning that a reasonable person would give under the circumstances and that such failure was a proximate cause of the accident. Sun and J.F.P. attack the sufficiency of the evidence to support those findings. Sun argues that Mr. Kellar, the J.F.P. foreman, was told about the electric lines and warned his crew to be careful of them, and consequently that Sun's duty to warn was discharged.

An *adequate* warning to an independent contractor or one supervising his work will discharge the duty of the occupier of land to warn the employees of the independent contractor. *Shell Chemical Co. v. Lamb*, 493 S.W.2d 742 (Tex.1973); *Delhi-Taylor Oil Corporation v. Henry*, 416 S.W.2d 390 (Tex.1967). However, the evidence presented in this case supports the finding of the jury that Sun failed to give such warning of the dangerous condition of the electric lines.

Depositions were introduced of Holmes and Preslar, Sun's employees who were in charge of field operations in the area at the time of the accident. Neither could recall ever having warned Kellar or any of the J.F.P. crewmen that the electricity would be on. Preslar, in fact, stated that he did not know whether the power was on or off at that time. Sarah Sue Massey, widow of the deceased, testified that Preslar told her several weeks after the accident that he had meant to tell the crew that the electricity was on, but that he simply forgot to do so. At the trial, Preslar denied having had such a conversation, but he admitted that he had never given any warning to any of the J.F.P. crewmen about "anything in relation to" the site.

Testimony of Kellar was introduced from two depositions, the first taken in 1973 and the second in 1977. In the first, Kellar stated that no one from Sun warned him to be careful of these power lines but that his crew was aware of the danger involved in working around power lines generally. He also said he had warned his crew not to drop rods from the derrick because they might come in contact with the power lines. In his second deposition, however, Kellar denied having warned his men about dropping rods and stated that he told them only to be careful about power lines.

We have noted the testimony of Mr. Newman, the surviving crew member, that an unidentified Sun employee (probably Preslar) told Kellar within the crew's hearing that the well would be ready to be worked on. He indicated that he and his fellow crewmen assumed that this meant the power would be off, that they had worked on other wells where the power had been cut off prior to their rigging up, and that he certainly would not have acted as he did if he had thought the power was on. He also stated unequivocally that no one ever warned the crew about any dangers at the well site, about any power lines, or about the power being on in those particular lines.

The jury was entitled to conclude from the evidence that Sun did not give a proper warning of the dangerous condition to either Kellar, the chief of the J.F.P. crew, or

the individual crew members. There was little evidence that Sun had given any warnings. Moreover, the only evidence which would establish that Kellar knew of the danger independent of any warnings from Sun was Kellar's own testimony to that effect. Even if uncontradicted, such testimony from an interested witness would at most raise a fact issue for the jury. *Gevinson v. Manhattan Construction Company of Oklahoma,* 449 S.W.2d 458 (Tex. 1969); *Amoco Chemicals Corporation v. Sutton,* 551 S.W.2d 459 (Tex.Civ.App.1977, writ ref. n. r. e.).

Sun's points one through six and J.F.P.'s points one through twenty-one, relating to Sun's negligence, are overruled.

### Negligence of decedent

■ Sun's third group of points concerns alleged negligence on the part of Massey. In points eight and nine, Sun argues that the trial court erred in failing to find as a matter of law that Massey was guilty of negligence because he pulled the cable within six feet of the power lines, in violation of Article 1436c, and that such action was a proximate cause of his death. Point seven asserts that it was error to overrule Sun's motion for judgment notwithstanding the jury's verdict, presumably because of Massey's alleged negligence referred to in points eight and nine, which if established would entitle Sun to prevail.

J.F.P.'s twenty-eighth point covers the same ground as Sun's seventh, eighth, and ninth points. Its twenty-second through twenty-seventh points challenge the sufficiency of the evidence to support the jury findings that Massey kept a proper lookout and was not negligent. J.F.P. relies on Sun's brief to support those points; hence, to the extent that it fails to do so, the points are waived. Rule 418(e), Tex.R. Civ.P.; *Burgess v. Sylvester,* 143 Tex. 25, 182 S.W.2d 358 (1944).

Article 1436c concerns safety procedures for persons working around high voltage lines and was enacted by the legislature in 1971. It provides, in pertinent part, as follows:

Sec. 3. Unless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provisions of Section 6 of this Act, no person, firm, corporation, or association shall require any employee to perform and no person, firm, corporation, or association shall, individually or through an agent or employee, perform any function or activity upon any land, building, highway, or other premises if at any time during the performance of any function or activity, it is possible that the person performing the function or activity shall move or be placed within six feet of any high voltage overhead line or if it is possible for any part of any tool, equipment, machinery, or material used by such person to be brought within six feet of any high voltage overhead line during the performance of any such function or activity.

\* \* \* \* \* \*

Sec. 6. When any person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall promptly notify the operator of the high voltage line. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or the operator of the lines or both and the person or persons responsible for the work to be done for temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage electric lines, temporary de-energization and grounding, or temporary relocation or raising of the lines. The actual expense incurred by any operator of high voltage lines in providing clearances as above set out shall be paid by the person or persons responsible for the work to be done in the vicinity thereof .

Section 7 provides for a fine or confinement in jail for any person who violates any provision of the Act.

Sun contends that by pulling the guy wire within six feet of the power line Massey violated a safety statute whose very purpose was to protect against the kind of accident involved in this case and was negligent as a matter of law. In support of its position, Sun cites *Tull v. San Patricio Electric Cooperative, Inc.*, 564 S.W.2d 192 (Tex. Civ.App.1978, writ ref. n. r. e.). In that case the plaintiff, who owned the business he was operating a crane for and the property where he was operating it, sued a power company for injuries received when the crane came into contact with the company's high voltage overhead power lines. The court denied recovery because the plaintiff's activity constituted a prima facie violation of Article 1436c.

We consider that under the facts of our case, the controlling precedent is to be found not in *Tull* but in *Ringo v. Gulf States Utilities Company*, 569 S.W.2d 31 (Tex.Civ.App.1978, writ ref. n. r. e.). In *Ringo* the court refused to apply the provisions of Article 1436c to bar the recovery of an individual workman whose employer had failed to comply with the provisions of Section 6 of the statute. In so deciding, the court first noted the general rule that a statute will not be construed so as to ascribe to the legislature an intention to do an unjust or unreasonable thing if such statute is reasonably susceptible of construction that will not accomplish that result. Then, after analyzing the provisions of Article 1436(c), the court concluded:

It is clear that the obligation to comply with the provisions of Sec. 6 is that of plaintiff's employer, Sparks, and not of the plaintiff, the individual workman. It is clear from the wording of this section of the statute that the obligation of compliance therewith cannot be that of the plaintiff because he has no authority to act for his employer in negotiating with Gulf States [the power company] and no authority to bind his employer, Sparks, in an agreement to pay the expenses for any work to be done as provided for in Sec. 6. This being correct, then a violation of Sec. 6 can only be committed by Sparks, and not this plaintiff.

Holding, as we do, that plaintiff has not violated Sec. 6 of the Act, then the question is whether plaintiff has violated the provisions of Sec. 3. In order to prove a violation of this section of the Act there must be a showing of more than the mere fact that plaintiff performed a function when it was possible . . . for any part of any tool, equipment, or machinery used by plaintiff to be brought within six feet of such lines. According to the express wording of this section, there is no violation "[u]nless danger against contact with high voltage overhead lines has [not] been effectively guarded against pursuant to the provisions of Section 6 of this Act. . . ." The gravamen of the offense or violation is the failure to comply with the provisions of Sec. 6, and, as we have previously noted, this violation can only be committed by the employer and not this plaintiff. 569 S.W.2d 31, 34.

We agree with *Ringo* that a reasonable construction of Article 1436c would not hold an individual workman responsible for violation of the statute by his employer in a suit by the workman against the power company. That reasoning applies with even greater force in our case. It would be harsh to allow an employer to assert a violation of the statute as a bar to recovery by an individual workman for injuries sustained as a result of the employer's violation of the statute, when the workman performed the acts constituting the violation in the course of his employment and at the direction of the employer. We think the legislature intended no such result.

Massey was a subordinate employee of J.F.P. Well Service. There is no evidence that he had any authority to negotiate the arrangements described in Section 6 or to obligate Sun or J.F.P. to pay any of the expenses mentioned. If anyone at the well site was "responsible for the work to be done," it would have been Preslar, Holmes, or Kellar, not Massey.

The *Tull* case relied on by Sun is distinguishable from the case at bar. In *Tull*, the

injured plaintiff was his own employer, as contrasted with Massey, who was an individual workman working for J.F.P. and for Sun.

Sun's points seven through nine and J.F.P.'s points twenty-two through twenty-eight are overruled.

### Conflicting jury findings

In its tenth point of error, Sun complains that the trial court erred in refusing to set aside the verdict of the jury because of alleged conflicts in the jury's answers to certain special issues. Sun argues in its eleventh point that this conflict reflects bias on the part of the jury in favor of the plaintiffs.[2]

The special issues and answers of which Sun and J.F.P. complain read as follows:

Special Issue No. 10. Do you find from a preponderance of the evidence that James W. Massey, at the time of the occurrence in question, was handling equipment and machinery which came within six feet of an overhead electric line carrying electricity in excess of 600 volts?    Answer: We do.

Special Issue No. 11. Do you find from a preponderance of the evidence that so handling equipment and machinery was negligence as that term has been defined to you?    Answer: We do not.

Special Issue No. 12. [Conditioned on an affirmative response to No. 11] Do you find from a preponderance of the evidence that such negligence on the part of James W. Massey was a proximate cause of the occurrence in question? Not answered.

\*    \*    \*    \*    \*    \*

Special Issue No. 17. Do you find from a preponderance of the evidence that J.F.P. Well Service, Inc., acting by and through its agents, servants, and employees other than James W. Massey, at the time of the occurrence in question, was handling equipment and machinery which came within six feet of an overhead electric line carrying in excess of 600 volts? Answer: We do.

Special Issue No. 18. Do you find from a preponderance of the evidence that so handling equipment and machinery was negligence as that term has been defined to you?    Answer: We do.

Special Issue No. 19. Do you find from a preponderance of the evidence that such negligence on the part of J.F.P. Well Service, Inc., was a proximate cause of the occurrence in question?    Answer: We do.

A conflict in jury findings will not prevent the rendition of judgment unless the findings, considered separately and taken as true, would compel the rendition of different judgments. See 3 McDonald, Tex. Civ.Prac. §§ 15.06.3, 15.06.7; *Union Mutual Life Insurance Company v. Meyer*, 502 S.W.2d 676 (Tex.1973); *Texas & Pacific Railway Company v. Snider*, 159 Tex. 380, 321 S.W.2d 280 (1959). J.F.P. argues that such is the case before us and that the judgment should therefore be set aside, but Sun recognizes that the alleged conflict is not fatal under that test. Sun urges that the judgment be set aside for other reasons, which will·be discussed below.

The negative answer to number 11, i. e., the jury's failure or refusal to find that Massey was negligent, when considered with the rest of the findings, permits judgment for the plaintiffs against Sun. The affirmative answer to number 18, however, does not affect that judgment one way or the other. That is, the jury's finding that J.F.P. was negligent relates only to Sun's third party complaint against J.F.P. and does not require rendition of judgment for Sun and against the plaintiffs. Thus, even if these findings were in conflict, the conflict would not be fatal.

---

2. J.F.P. also complains of the alleged conflict in its points thirty-seven through forty. In addition, J.F.P.'s points twenty-nine through thirty-four attack the sufficiency of the evidence to support the jury findings in response to special ·issues 18 and 19, and points thirty-five and thirty-six assert that in any event the jury's answers are favorable to J.F.P. and support a verdict in its favor against Sun. These last eight points of J.F.P. are not briefed and are considered waived. Thus there is no complaint before us concerning the sufficiency of the evidence to support the answer to Special Issue 11.

J.F.P. argues that regardless of its effect on the plaintiffs' claim against Sun, the alleged conflict is fatal because it compels rendition of different judgments on the indemnity claim between Sun and J.F.P. Applying the test described above, we cannot agree. The jury's finding that J.F.P. was negligent, taken as true, requires judgment against J.F.P. on the indemnity claim. However, the failure to find that Massey was negligent, considered separately and also taken as true, does not affect that judgment.

J.F.P. makes the point that the answer to Special Issue No. 11 is vital to the question of its liability on the indemnity agreement. It is true that a *different* answer—i. e., a finding that Massey was negligent—would release J.F.P. from its liability (by indemnity) to Sun, since Sun would not be liable to the plaintiffs in the first place. However, the test which must be applied in evaluating a supposed conflict in jury findings does not look at the effect of *different* answers, but rather at the effect of the answers as given. It would be difficult to imagine a case where a different answer to a crucial disputed fact issue would not affect the outcome of the case.

■ Sun's eleventh point of error is that the trial court erred in entering judgment on the verdict because it was reached as a result of bias and prejudice. Sun argues that the conflict here is so totally inexplicable and manifestly unjust and wrong that, taken together with what Sun calls "extremely excessive damage awards," it demonstrates the jury's bias in favor of the plaintiffs. On this basis, Sun asserts, the judgment should be set aside even if the conflict is not deemed fatal under the test described above.

We cannot say that the damage awards were excessive, and we do not agree that the trial judge erred in entering a judgment on the verdict. Sun's allegations of jury bias in favor of the Masseys are not established by the jury findings in response to Special Issues 11, 18 and 19.

Sun's points ten and eleven and J.F.P.'s points twenty-nine through forty are overruled.

### Judgment as to Preslar

■ Sun's twelfth and thirteenth points complain that the trial court erred in entering judgment against Preslar in the absence of any jury findings concerning him. Although the plaintiffs' pleadings join him as a defendant with Sun Oil Company, none of the special issues submitted to the jury makes any mention of Preslar, and the plaintiffs did not object to the trial court's charge for failure to include such issues. Unless it can be said that Preslar is liable as a matter of law, there is no basis for entry of a judgment against him. See *Washington v. Reliable Life Insurance Company,* 581 S.W.2d 153 (Tex.1979); *Glens Falls Insurance Co. v. Peters,* 386 S.W.2d 529 (Tex. 1965); Tex.R.Civ.P. 279.

The evidence is insufficient to establish as a matter of law that Preslar was guilty of negligence. Although it is clear that his employer, Sun, owed a duty to Massey to maintain reasonably safe premises or to warn him of danger, it it not at all clear that Preslar, as an individual, owed the same duty. Preslar and Holmes were apparently in charge of Sun's Conroe field office in March of 1972. Holmes was a production foreman, and Preslar was an engineer technician, but it is not clear what their respective duties and responsibilities were.

The plaintiffs have failed to establish the extent of Preslar's authority or of his personal responsibility for the workover operation, so we cannot say that he is liable individually as a matter of law. The judgment against Preslar must be reversed and rendered in his favor.

### Indemnity agreement

J.F.P.'s forty-first point of error complains about numerous actions of the trial court, but the gist of it is that the indemnity agreement between Sun and J.F.P. is unenforceable because it does not make clear enough that J.F.P. is obligated to indemnify Sun where Sun's own negligence caused liability.

Article 2212b, Tex.Rev.Civ.Stat., now declares it to be against public policy to enforce certain indemnity agreements pertaining to oil wells which purport to protect an indemnitee against the consequences of his own negligence. However, that Article was expressly made applicable only to agreements made on or after August 27, 1973, the effective date of the Act, so the validity of the agreement between Sun and J.F.P. dated August 17, 1967 is not affected by Article 2212b.

 The general rule is that an indemnity agreement will not protect the indemnitee against the consequences of its own negligence unless the obligation is expressed in the agreement in unequivocal terms. *Goodyear Tire and Rubber Company v. Jefferson Construction Company*, 565 S.W.2d 916 (Tex.1978); *Fireman's Fund Insurance Company v. Commercial Standard Insurance Company*, 490 S.W.2d 818 (Tex. 1972); *Spence & Howe Construction Co. v. Gulf Oil Corporation*, 365 S.W.2d 631 (Tex. 1963). It is not necessary for the parties to say, in so many words, that they intend to save the indemnitee harmless for his own wrongs, but it is necessary for that intention to clearly appear when all the provisions of the contract are considered in the light of the circumstances surrounding its execution. *Joe Adams & Son v. McCann Construction Company*, 475 S.W.2d 721 (Tex.1971).

The service contract between Sun and J.F.P. is a two-page contract containing eleven paragraphs, all of which are in the same type-face and are equally prominent. The indemnity provision reads as follows:

6. INDEMNITY: Contractor agrees to protect, indemnify and hold Sun and its employees free and harmless from and against any and all claims, demands and causes of action of every kind and character from any cause whatsoever (except only as a result of the sole negligence of said indemnitees) by any party hereto, any party acquiring any interest hereunder, any of their agents and employees, and any third or other party whomsoever, or governmental agency, arising out of, incident to, or in connection with this agreement, or operations thereunder or breach of the terms thereof, including without limitation by enumeration all taxes, claims, debts, fines, penalties, forfeitures, patent infringements, loss of use, death, injury and damages to all persons and property, together with the amount of judgements, penalties, interest, court costs, legal and other fees and expenses in connection therewith.

We conclude that by the quoted language the parties intended that J.F.P. would indemnify Sun for all damages paid for injuries in connection with this agreement except those resulting from the sole negligence of Sun.

We hold that the indemnity agreement between Sun and J.F.P. supports the judgment entered by the trial court in favor of Sun against J.F.P.

The judgment of the trial court is affirmed except that as to Henry Preslar it is reversed and rendered in his favor.