**EDCO PRODUCTION, INC., Appellant,**

v.

**Johnny HERNANDEZ, et ux., Appellees.**

**No. 04–87–00122–CV.**

Court of Appeals of Texas,
San Antonio.

June 29, 1990.

Rehearing Denied Aug. 21, 1990.

**70**

Sharon E. Callaway, Damon Ball, Groce, Locke & Hebdon, San Antonio, for appellant.

James E. Hope, Hope, Henderson, Hohman & Georges, San Antonio, for appellees.

Before CADENA, C.J., and REEVES and PEEPLES, JJ.

## OPINION

CADENA, Chief Justice.

Defendant, EDCO Productions, Inc., appeals from a judgment, based on jury findings, awarding $67,815.00 to plaintiffs, Veronica Hernandez, widow of Johnny Hernandez, and the four children of Johnny and Veronica, as damages because of personal injuries suffered by Johnny Hernandez when an oil storage tank under the control of defendant exploded while Hernandez, the employee of an independent contractor, was attempting to weld a ring or hoop on a ladder attached to the tank.

The suit was originally filed by Johnny Hernandez and his wife, Veronica. Johnny died prior to trial from causes unrelated to the injuries he suffered as a result of the explosion, and his four children joined Veronica as plaintiffs.

The first special issue inquired whether the presence of explosive gases in the tank presented an unreasonable risk of harm to Hernandez. Since the jury failed to find that the presence of explosive gases in the tank presented an unreasonable risk of harm to Hernandez, in conformity with the court's instruction no finding was made to Special Issue No. 2 which asked whether defendant was guilty of negligence proximately causing the occurrence in question by (a) failing to purge or clear the tank of such gases; (b) failing to inspect the tank to determine the existence of such gases; or (c) failing to warn Hernandez of the presence of explosive gases in the tank.

The judgment in favor of plaintiffs is based on findings, in answer to Special Issues Nos. 3, 4 and 5, that Mark Cullen, one of defendant's employees, negligently led Hernandez to believe that it was safe to weld while on the oil tank ladder and that such negligence was the proximate cause of the occurrence in question.

Defendant does not challenge the sufficiency of the evidence to support the answers to Special Issues Nos. 3, 4 and 5, nor does it contend that the answers to such

issues are in irreconcilable conflict with the answer to Issue No. 1. Defendant assails the judgment subjecting it to liability "because there is no finding and there is no evidence that [it] retained the necessary level of control required to create a duty" on its part. In the alternative it claims that it "is entitled to a new trial because the trial court erred in overruling defendant's objection to Special Issue No. 3, which was a defective submission of the theory of control required to give rise to a duty."

Defendant's complaint that there is no finding and no evidence that it retained the level of control required to impose on it a duty to exercise reasonable care for the safety of Hernandez asserts the absence of any evidence which would support the finding of facts that would give rise to a duty owed by defendant to Hernandez. This complaint requires that we consider only the evidence and such inferences as it justifies which support the finding of the existence of a duty. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). Our summary of the evidence reflects the selectivity commanded by this rule.

Defendant's duties as operator of oil leases for Caja Production Corporation included the maintenance and servicing of pumping units and oil storage tanks located on two tracts of land identified in the evidence as the Watts property and the Ryan property. Eldon Box, president and sole owner of defendant, owned a one-half interest in Caja Production Corporation.

When Jack Ryan, one of defendant's pumpers, reported that the ring or hoop on the ladder of a pumping unit on the Watts property needed repairs, Box decided to employ Oilfield Service Company (OFSCO), the employer of Hernandez, to do the required welding work, although defendant had welders in its employ. Mark Cullen, another of defendant's employees, was told to go to OFSCO's office, pick up a welder, and take him to the place where the work was to be done. For some reason not made clear by the record, Cullen's superior told him that the repairs were needed on an oil storage tank located on the Ryan property, rather than on the pumping unit on the Watts property which had been reported to Box as being in need of repairs.

After Cullen met Hernandez at the OFSCO office, Cullen drove to the tank on the Ryan property followed by Hernandez who was driving an OFSCO truck. At this time Hernandez had been working for OFSCO about eight days. Although he was an experienced welder, his previous work had been limited to making drilling bits in shops. He had done no welding in or around oil fields or on oil storage tanks.

When Cullen and Hernandez arrived at the oil tank on the Ryan property, Cullen climbed to the top of the tank, using a ladder which was bolted to the side of the tank. A hatch which permitted access to the inside of the tank was visible from the top of the ladder, but Cullen did not check to determine whether the hatch was open or closed, nor did he make any effort to determine whether the tank contained any oil. While atop the tank, Cullen pointed out to Hernandez a broken ring or hoop which required welding at the top of the ladder.

In answer to a question by Hernandez, Cullen said that the tank had been cleaned. Hernandez, noticing a pool of oil on the ground near the base of the tank, expressed concern that the oil might be ignited by sparks while he was welding. Cullen told him that there was no danger that the oil would catch fire. Before Cullen drove away from the tank Hernandez again asked if it would be safe to weld while at the top of the ladder. Cullen again assured Hernandez that it would be safe, adding "that he wouldn't put [Hernandez] up there, if he wasn't sure."

After thus reassuring Hernandez that it would be safe to weld while on the tank, Cullen drove away. He heard an explosion when he was about 100 yards from the tank and, turning around, returned to the tank. When he reached the tank he found evidence of an explosion and saw Hernandez lying on the ground.

Cullen had not "gauged" the tank to determine if it contained any oil. He ex-

plained that he had nothing to do with the storage tanks on the leases and that Jack Ryan, another EDCO employee, was the only person who had anything to do with the tanks. Prior to the accident, Cullen did not talk to Ryan about the condition of the tank. When Cullen climbed to the top of the tank after the explosion he noticed that the tank was "rounded out" from the internal pressure and that the hatch was open.

Jack Ryan testified that on the day of the explosion the tank contained about two feet of oil. He knew of no duties that Cullen was required to perform on the Ryan property.

Eldon Box, defendant's president, had worked around oil fields for 14 years, including work as a pumper. He testified that it was not safe to weld while on an oil tank. An oil tank is dangerous at all times because it is explosive at all times, irrespective of the quantity of oil in it. In fact, the less oil there is in a tank the greater is the danger of explosion. Before he would weld on an oil tank he would require that it be "steamed or sniffed."

According to Box, the safest procedure to follow before welding on a tank "would be to steam the tank, and to weld on the tank while it is being steam-cleaned and also full of steam." The next safest procedure would be simply to flush it with water. He testified that when he welded on a tank "we would fill it with fresh water and open all the hatches, leave it overnight, sniff it again, and we would have to get a couple of clear readings before we would strike an arc on a tank." He said that it would be "decently safe" to weld on an oil storage tank after it had been cleaned.

A plaintiff seeking recovery in tort must establish that defendant breached a duty which he owed to plaintiff. *Otis Engineering Corporation v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). In this case, as defendant points out, since EDCO was in control of the premises, its duties to Hernandez were the same as the duties owed by an owner or occupier of land to the employee of an independent contractor. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985).

The courts have not chosen to devote much time to analysis of the problem of duty, and it is not surprising that there are no fixed rules to guide us in determining whether a duty will or will not be imposed on A for the benefit of B. There are simply matters of which courts take account. In *Otis*, then Justice Kilgarlin said that "factors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the" defendant. *Otis Engineering Corporation*, 668 S.W.2d at 309. Interestingly enough, *Otis* is an example of the modern tendency to extend tort liability, although it must be pointed out that it involved the question of the duty of an employer.

■ Since defendant's duty to Hernandez is to be measured by the duty imposed on the possessor of land to the employee of an independent contractor, defendant was under an affirmative duty to protect Hernandez not only against dangers of which it had knowledge but also against those which it might have discovered by exercise of reasonable care. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983); *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452, 454–5 (Tex.1972); RESTATEMENT (SECOND) OF TORTS §§ 343, 343(a), (c) (1965). If defendant had actual or constructive knowledge of a condition on the premises which posed an unreasonable risk of harm to Hernandez, it had a duty to take whatever action was reasonably prudent under the circumstances to eliminate or reduce the unreasonable risk from such condition.

In this case the testimony of defendant's president was that oil storage tanks were explosive and dangerous at all times and that it was not safe to weld while on an oil storage tank unless the tank had been properly cleaned beforehand. Defendant knew of the existence of the dangerous condition and failed to take steps to elimi-

nate it or to warn Hernandez of its presence.

Box's testimony is evidence of "a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it. . . ." *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 754 (Tex.1970). Since the question of whether a condition constitutes an unreasonable danger depends on the facts of each case, whether or not an ordinarily prudent person could foresee the probability of harm to plaintiff is normally for the jury to decide. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537–38 (Tex.1975); *Physicians and Surgeons General Hospital v. Koblizek,* 752 S.W.2d 657, 660 (Tex. App.—Corpus Christi 1988, writ denied).

In the usual case, the duty of the possessor is in no way dependent on his right to control the activities of the employee of the independent contractor. The question of control over the work performed by the independent contractor or his employees arises in connection with questions concerning the liability of the employer of the independent contractor to third persons for the negligence of the independent contractor or its employees. RESTATEMENT (SECOND) OF TORTS § 414 (1977), which was relied on in *Redinger v. Living, Inc.,* 689 S.W.2d at 418, is found in Chapter 15 of the Restatement and deals with the liability of the employer of an independent contractor for harm caused to others by the negligence of such contractor or its employees. Thus, section 409 embodies the general rule that, except as stated in the chapter's subsequent twenty sections, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."

The many exceptions to this rule of nonliability of the employer of an independent contractor are set out in sections 410–429. Section 414, therefore, states an exception to the rule of nonliability of the employer of an independent contractor for the negligence of such contractor or his servants. The provision in section 414 that a person "who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care" must be construed as an imposition of liability on such employer, and not as a limitation on the liability of the employer.

*Redinger v. Living, Inc.,* 689 S.W.2d at 418, correctly applied section 414. There the supreme court was concerned with the liability of a general contractor, Living, Inc, who was in control of the premises when an employee of a plumbing subcontractor was injured because of the negligence of a dirt hauling subcontractor. The supreme court concluded that Living, Inc., retained some control over the manner in which the dirt hauling contractor's work was performed and, therefore, Living, Inc., was liable to Redinger, the employee of the plumbing subcontractor, for the injury caused by the negligence of the dirt hauling contractor. At no time did the supreme court concern itself with the question of whether or not Living, Inc., retained any control over the activities of the plumbing subcontractor or its injured employee, Redinger.

Despite the lack of control by Living, Inc., who, like defendant here, was in the position of a possessor of land, over the activities of either plaintiff, Redinger, or his independent contractor employer, the supreme court held that Living, Inc., because it retained control over part of the work performed by the independent dirt hauling contractor employed by it, was liable for the injury caused to Redinger by the negligence of the dirt hauling contractor. Stated simply, *Redinger* imposed liability on the possessor for injury inflicted on a third person by an independent contractor employed by the possessor. Neither *Redinger* nor section 414 can be relied on to absolve a possessor of liability for injury to the employee of an independent contractor resulting from the possessor's negligence.

Defendant asserts that the act of Cullen in responding to questions from Hernandez

cannot be held to constitute supervision or control by defendant over the details of the work which Hernandez was to do. Defendant argues that even if, as the jury found, Cullen led Hernandez to believe that it was safe to weld on the tank by answering "yes" to the inquiry by Hernandez, this imposed no legal duty on Edco because Cullen did not undertake to control the manner in which Hernandez performed the repair work. According to defendant, the giving of a gratuitous opinion to a question does not amount to the assertion of sufficient control to give rise to a legal duty.

■ It must be noted that Cullen did not simply answer "yes" to a question inquiring whether it was safe to weld on the tank. His assurance of safety was accompanied by a representation that the tank had been cleaned. Defendant, disregarding the rule that we are to consider only evidence which supports the judgment, points to the fact that Cullen testified that he never contemplated Hernandez would weld without removing the ladder from the tank. Cullen's testimony concerning what he contemplated does not tend to support the judgment and we will ignore it as we are required to do in considering defendant's no evidence point. But we will point out there is no evidence that Hernandez knew the ladder could be removed from the oil storage tank. Cullen did not tell him the ladder could be removed. In addition, we find it difficult to ignore the evidence concerning the questions Hernandez asked in seeking to determine whether the work could be safely performed. He asked "had the tank been cleaned" and if it was safe to weld with the puddle of oil on the ground near the tank. The questions furnish no basis for Cullen's contemplation that Hernandez intended to remove the ladder from the tank. The fact that Cullen assured Hernandez there was no danger or he would not have "put" Hernandez "up there" shows that Cullen assumed the welding would be done while Hernandez was on the tank.

Defendant's liability does not rest on its right to control the activities of Hernandez. The jury's finding that Cullen negligently led Hernandez to believe that it was safe to weld while on the tank necessarily reflects that the jury believed Cullen's representations were false. It cannot be argued that the jury believed that the giving of truthful answers constituted negligence. If we draw the inferences justified by the evidence which supports the verdict, we must conclude that the jury found Cullen's false answers constituted a failure by defendant to warn Hernandez of hidden dangers. The duty to warn of such danger is in no way dependent on the retention of control by the possessor of the activities of the employee of an independent contractor.

*Bryant v. Gulf Oil Corporation,* 694 S.W.2d 443 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.), is not "analogous to the one at bar," as defendant asserts. There, Gulf hired an independent contractor to repair an oil well on a Gulf lease. An employee of the independent contractor was severely injured when the gin pole he was guiding with a steel cable came in contact with a high voltage electrical line. The employee sued Gulf, alleging that Gulf should have warned him of the danger presented by the overhead electrical wires. *Id.* at 446.

In *Bryant,* the court based its affirmance of the summary judgment in favor of the possessor in part on the fact that defendant had no control over the power line and there was no evidence that it "could have arranged for the interruption of electricity on the ... power line." *Bryant,* 694 S.W.2d at 447. Here there can be no doubt that defendant was in complete control of the oil storage tank. It is significant that the *Bryant* court relied on this lack of control to distinguish *Edwards v. Shell Oil Company,* 611 S.W.2d 904 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.) and *Sun Oil Company v. Massey,* 594 S.W.2d 125 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), two cases which ruled in favor of an employee of an independent contractor against the possessor of land.

Defendant points out that the upholding of the summary judgment in favor of defendant in *Bryant* was also based on the theory that defendant could presume that the independent contractor would take nec-

essary precautions to assure the safety of its employees, so that the possessor was under no duty to warn such employees of dangers which arose from performance of their work. *Bryant,* 694 S.W.2d at 445–446.

In its discussion of *Bryant,* defendant points out that the holding in favor of the possessor also finds support in the fact that there was no legal duty to warn because the presence of the electrical lines was "reasonably apparent." It cites *Sun Oil Company v. Massey,* 594 S.W.2d at 128–9, as supporting its theory that a possessor of land is under no duty to warn the employee of an independent contractor of a dangerous condition on the premises which is reasonably apparent.

It is true that under the "no duty" rule applied in cases such as *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex. 1963), and *Robert E. McKee, General Contractor, Inc., v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954), Texas courts would have held that if the danger was so open and obvious, Hernandez would be charged with knowledge and appreciation of the danger and defendant would owe him "no duty" to warn or protect him. Stated differently, under that rule, a possessor of land would not be liable for injuries caused by open and obvious defects on the land. But the Texas Supreme Court abolished this "no duty" rule in 1978 in *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 517, 521 (Tex.1978), holding that the knowledge of plaintiff, "whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, is a matter that bears upon his own negligence; it should not affect the defendant's duty." After *Parker,* in cases such as the one before us, questions of knowledge and conduct are simply factors which must be weighed in determining whether plaintiff was contributorily negligent, not whether the possessor was negligent. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 n. 1 (Tex.1983).

*Exxon Corporation v. Quinn,* 726 S.W.2d 17 (Tex.1987), can be of no comfort to defendant. There Quinn, an employee of an independent contractor, was injured while working on a utility pole located on an Exxon lease. The independent contractor was employed by Exxon to "drop-out" a power line running between two utility poles. In order to perform the work, Quinn had to climb an energized utility pole. The customary safety procedure was to call the power company who would send out someone to disconnect the power to the pole. The power company employee would then write the name of the person who was scheduled to work on the pole on a red tag and attach it to the pole. After completing the necessary work, the named individual would sign the tag and the power would be reconnected. The procedure ensured that the pole being worked on would not be reenergized until the person who climbed the pole was back on the ground.

When Quinn and his foreman arrived at the lease, an on-site Exxon representative asked whether the power company should be called to perform the red tag procedure. Quinn's foreman replied that he would disconnect the power while Quinn was on the pole. The foreman did, and Quinn ascended the pole. After completing his work, Quinn started to descend the pole but stopped below the danger area to reach up and straighten some wires located in the danger area. The foreman, who could see only Quinn's shoulders and not his head and hands, reenergized the pole. Quinn then suffered a severe electrical shock which caused him to fall from the pole.

The jury found that the Exxon representative had participated in the decision not to summon the power company to disconnect and reconnect the power to the pole and that such participation was negligence which proximately caused Quinn's injuries. The trial court rendered judgment non obstante veredicto in favor of Exxon, but the court of appeals reversed the judgment and rendered judgment for Quinn, holding that the jury finding that Exxon participated in the decision not to call the power company supported recovery against Exxon.

The supreme court unanimously held that Exxon's participation as found by the jury did not reach that level of control

required to render Exxon liable.[1] Contrary to defendant's contention, *Quinn* is not "directly on point with this case." There, at most, it might be said that Exxon acquiesced in the decision not to call the power company, but the facts leave no doubt that the decision was made solely by Quinn's foreman, not by Exxon, and it is clear that Exxon make no effort to take part in that decision. At all times, Quinn's employer, not Exxon, exercised complete control. *Exxon Corporation,* 726 S.W.2d at 20. In the case before us Cullen, defendant's representative, did not ask a question seeking to ascertain the desires of Hernandez. He answered questions concerning the safety of welding "up there." Hernandez was placed in jeopardy because of Cullen's assurances and, as already pointed out, it was Cullen's decision to put Hernandez "up there." The case before us is more closely analogous to *Redinger,* where it was the decision of the possessor that placed the employee of the independent contractor in a position of danger. *Redinger,* 689 S.W.2d at 418.

If the existence of a duty on the part of defendant is, in fact, dependent on the presence of evidence of retention of sufficient control by defendant, we hold that the record contains such evidence.

Defendant's second point, insisting on a right to a new trial because the court erred in overruling its objection to Special Issue No. 3 must be rejected. Special Issue No. 3 asked the jury, "Do you find from a preponderance of the evidence that on the occasion in question Mark Cullen led Johnny Hernandez to believe the oil tank ladder was safe to weld on?" Defendant argues that this issue "was a defective submission of the theory of control required to give rise to a duty." Defendant presented six separate objections to the submission of Special Issue No. 3, but its brief of this point consists of 17 lines and cites only *Quinn,* without calling our attention to the specific objection which was incorrectly overruled.[2]

We do not view Special Issue No. 3 as an attempt to submit an inquiry related to control. That is, we do not believe that our review of the case is limited to a determination of whether defendant retained sufficient control over the activities of Hernandez. Special Issue No. 3 does not involve a failure by defendant to properly exercise its control over the activities of the independent contractor and the employees of such independent contractor. It relates to an act of negligence by defendant itself—an act entirely unrelated to defendant's right to control Hernandez. As previously pointed out, defendant does not argue that there is no evidence to support the jury's finding that defendant, through Cullen, negligently led Hernandez to believe that it was safe to weld while on the tank. The assurances given by Cullen can be viewed as statements of fact to induce Hernandez to weld while at the top of the ladder where Cullen had "put" him. *Compare Heldenfels v. Montgomery,* 157 S.W.2d 998, 1000 (Tex.Civ.App.—San Antonio 1941, writ dismissed) (statements made in furtherance of employer's business for the purpose of inducing independent contractor to make repairs). We are not inclined to shield a possessor from liability for injuries resulting from negligent misrepresentations of fact, particularly where, as was the case with Cullen, there has been a failure to exercise reasonable care to ascertain the accuracy of the information communicated

---

1. Although there was a dissent, it was concerned only with whether Exxon's actions proximately caused the plaintiff's injuries.

2. The defendant objected to the submission of Special Issue Number 3 because: (1) It was not an ultimate issue but a shade or phase of the issue with respect to warning; (2) an affirmative answer would not constitute a finding of any representation to Mr. Hernandez; (3) there was no evidence that Cullen led Hernandez to believe the oil tank ladder was safe to weld on and there was no evidence that Hernandez believed anything Cullen said about the welding or the tank; (4) there was no evidence that it was unsafe to weld on the ladder because the testimony by Cullen and Box that the ladder could have been removed and taken elsewhere to be safely welded was undisputed; (5) this issue was duplicitous of Special Issue Number 2C; and (6) Cullen owed no duty to Hernandez to advise him on how to perform his work because it was undisputed that Hernandez was an employee of an independent contractor.

to plaintiff. RESTATEMENT (SECOND) OF TORTS § 311 (1965).

Defendant's first two points of error present no cause for reversal.

Defendant's third point urges that the award of $17,000.00 to plaintiffs as compensation for loss of services of Johnny Hernandez is excessive and that the evidence is factually insufficient to support the jury finding on which such award is based. We disagree and reject defendant's request that we order a remittitur of $12,000.00.

The widow of Johnny Hernandez testified that prior to the accident he was healthy, strong, robust, and was seldom ill. He would "mow the lawn; clean the garage; wash the car, fix screens;" and generally take care of "whatever needed fixing around the house." During the four years, eight months and twenty-six days intervening between the date of the accident and his death, Hernandez was unable, because of his injuries, to perform any of these duties. During this period he was incarcerated for eight months so that his family was deprived of his services for slightly more than four years preceding his death.

■ The term "services" includes household and domestic duties performed by a spouse. *Whittlesey v. Miller,* 572 S.W.2d 665, 666 n. 2 (Tex.1978). No evidence of the monetary value of the services is required. *Armellini Express Lines of Florida, Inc., v. Ansley,* 605 S.W.2d 297, 312 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The value is to be determined by the jurors based on their everyday experiences. *C.E. Duke's Wrecker Service, Inc., v. Oakley,* 526 S.W.2d 228, 235–236 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). These principles preclude an appellate court from disturbing a jury's award for loss of services on the ground that it is excessive in the absence of circumstances showing that the award "was the result of passion, prejudice or other improper motive," or that the award "was not the result of a deliberate and conscientious conviction in the minds of the" jurors, or that it is so excessive that it shocks the reviewing court's sense of justice. *Green v. Rudsenske,* 320 S.W.2d 228, 235 (Tex.Civ.App.—San Antonio 1959, no writ).

■ The amount awarded for loss of services represents an award of approximately $354.00 per month for the variety of household and domestic services which Johnny Hernandez performed for his family prior to his injury. Even if we would have awarded a smaller amount, the wide discretion with which the jury is clothed in making an award for lost services bars the substitution of our judgment for that of the jury. *Mahan Volkswagen, Inc., v. Hall,* 648 S.W.2d 324, 334 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); *Main Bank & Trust v. York,* 498 S.W.2d 953, 955 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). The record furnishes no basis for concluding that the award was the result of passion, prejudice or other improper motive rather than the result of the jury's deliberate and conscientious conviction. Nor can we say that the award is so excessive that it shocks our sense of justice.

Plaintiffs' cross point contending that the trial court erred in overruling their motion to disregard certain jury findings will not be considered since the record does not reflect that the trial court ruled on this motion. *See City of Jacksonville v. Hill–Tex Communications, Inc.,* 613 S.W.2d 76, 78 (Tex.Civ.App.—Tyler 1981, no writ).

The judgment of the trial court is affirmed.

PEEPLES, J., concurs in the result.